# EXHIBIT 1

Thomas A. Burnett, Esq. (#026509)
Donal E. Burnett, Esq. (#028800)
**Burnett Law Office, PLC**
1744 South Val Vista Drive, Suite 208
Mesa, AZ 85204
(480) 347-9116
tom.burnett@burnettlawaz.com
don.burnett@burnettlawaz.com
Attorneys for Plaintiff

COPY

FEB 04 2020

CLERK OF THE SUPERIOR COURT
M. MESSMER
DEPUTY CLERK

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| LEI ANN STICKNEY, on her own behalf and on behalf of all statutory beneficiaries; <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PHOENIX, a municipality; JOHN and JANE DOE I-X; and ABC COMPANIES I-X; <br><br> Defendants. | ACTION NO: CV2020-091655 <br><br> **COMPLAINT** <br><br> (Tort, Wrongful Death) <br><br> (Jury Trial Demanded) |

Plaintiff, Lei Ann Stickney, by and through undersigned counsel, for her complaint against the defendants named herein alleges as follows:

1. Plaintiff, Lei Ann Stickney, is an adult female presently residing in the State of Arizona. Plaintiff is the surviving mother of Casey Wells, and brings this action on her own behalf and as statutory trustee for all statutory beneficiaries pursuant to A.R.S. § 12-611 et seq..

2. Defendant City of Phoenix is a municipality and a political subdivision of the State of Arizona, organized and existing under the laws of the State of Arizona.

3. The amount in controversy exceeds the jurisdictional limitations of this Court.

4. As to Plaintiff's claims under Arizona state law, Plaintiff served a timely notice of claim pursuant to A.R.S. § 12-821.01 upon Defendant City of Phoenix. The notice of claim complied in all ways with the statute, was timely served, and is deemed denied by operation of statute.

5. The events that form the basis of this Complaint occurred on or about February 4 through February 6, 2019, in Maricopa County.

6. Venue is proper in the Superior Court in and for Maricopa County.

7. Pursuant to Rule 26.2(c)(3)(A), Arizona Rules of Civil Procedure, this case is properly assigned to Tier 3.

8. On February 4, 2019, City of Phoenix police officers responded to calls reporting a naked man in the street.

9. The man was Plaintiff, Casey Wells, who was naked and praying, or performing yoga, in the street.

10. When police officers respond to a non-violent call, involving a citizen who is either mentally ill or intoxicated because of drug use, the officer(s) should take steps to keep the situation calm.

11. Where violence or destructive acts have not occurred, the officer(s) should avoid physical confrontation and should take the time to calm a citizen and assess the situation.

12. If it becomes necessary to restrain the citizen, an electronic control device, such as a taser, should not be used against citizens that are handcuffed/restrained.

13. City of Phoenix police officer, James Arnold, arrived first on scene.

14. Approximately two minutes later, Officer Robert Rodarme arrived on scene.

15. Within forty-four seconds after Officer Rodarme arrived, he requested another unit.

16. Officers Arnold and Rodarme initiated a physical confrontation Plaintiff, Casey Wells.

17. Plaintiff, Casey Wells, was not armed.

18. He was in the street, naked, with no access to weapons.

19. Casey posed no threat of harm to himself or those around him.

-2-

20. Officer Arnold knew Casey Wells was not armed.

21. Officer Rodarme knew Casey Wells was not armed.

22. Officer Arnold knew that Casey Wells was suffering from a mental psychosis, a drug induced delusion, or both.

23. Officer Rodarme knew that Casey Wells was suffering from a mental psychosis, a drug induced delusion, or both.

24. Officer Arnold knew Casey Wells posed no threat of harm to himself or those around him.

25. Officer Rodarme knew Casey Wells posed no threat of harm to himself or those around him.

26. Notwithstanding, rather than take reasonable efforts to keep the situation calm, within minutes of approaching Casey Wells, Officers Arnold and Rodarme attempted to physically apprehend Casey.

27. Casey Wells responded by spinning in circles and flailing his arms.

28. Officers Arnold and Rodarme continued to escalate the situation by initiating excessive levels of force against Casey.

29. A third police officer arrived on scene, Officer Seaquist.

30. Either shortly before Officer Seaquist arrived, or shortly after Officer Seaquist arrived, the officers secured Casey Wells with handcuffs behind his back, lying on his stomach, naked, on the asphalt.

31. Three more officers arrive on scene.

32. All officers on scene participated in the assault on Casey Wells.

33. No officers on scene intervened to stop the assault on Casey Wells.

34. All officers on scene knew Casey Wells was not armed.

35. All officers on scene knew that Casey Wells was suffering from a mental psychosis, a drug induced delusion, or both.

36. All officers on scene knew Casey Wells posed no threat of harm to himself or those around him.

37. All officers on scene continued to escalate the situation by initiating excessive levels of force against Casey.

38. Officer Seaquist shoots Casey Wells with his taser gun.

39. Officer Seaquist shot Casey Wells with his taser gun five times over a time frame of one minute and thirty-five seconds.

40. One of the officers announces that Casey is purple with no pulse.

41. At some time during the assault on Casey, one or more of the officers use such force on Casey Wells' throat that they fracture the thyroid cartilage horns in Casey's neck.

42. Roughly twelve minutes from the time the first officer arrived on scene Casey Wells is purple with no pulse.

43. It took one or more of the officers roughly twelve minutes to kill a naked, unarmed, nonviolent man, in the middle of the street.

44. Paramedics arrive and administer epinephrine and a pulse is recovered.

45. Casey is taken to John C. Lincoln Deer Valley Hospital where he is diagnosed with cardiopulmonary arrest, pulseless electrical activity, encephalopathy acute, systemic inflammatory response syndrome, acidosis, lactic acid increase, hypernatremia, and coagulopathy. An EEG shows "severe, global cerebral dysfunction", with generalized epileptiform activity and multiple generalized electrographic seizures. A CT scan of his brain tells us "findings most compatible with severe hypoxic ischemic brain injury involving gray matter structures with effacement of basilar cisterns and slightly downward displacement and swelling of cerebellar tonsils". Casey is brain dead.

46. Two days later, on February 6, 2019, the hospital staff order a palliative care consult. Casey's mother, Lei Ann Stickney has been by his side, now she must call loved ones and ask them to come give Casey their last goodbyes. On February 6, 2019 at 17:46 hours, Casey Wells is pronounced dead.

47. Defendant City of Phoenix is responsible for training and supervising Phoenix Police Officers regarding the reasonable use of force.

48. Defendant City of Phoenix has failed to properly train and supervise its police officers regarding the reasonable use of force.

49. The City of Phoenix has a policy, custom, or practice of training officers to "escalate" situations. That is, to use more force than is reasonably necessary or appropriate to respond to situations.

50. The City of Phoenix knows that its policy, custom, or practice of training officers to "escalate" situations results in unreasonable uses of force.

51. The City of Phoenix's policy, custom, or practice of training officers to "escalate" situations increases the incidence of uses of unreasonable force.

52. The City of Phoenix has a policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police officer uses of force.

53. The purpose of the City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police officer uses of force is to prevent the public and the victims of police excessive force from learning about the real facts involved in the uses of force.

54. The purpose of the City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police officer uses of force is to prevent victims of police excessive force from bringing lawsuits against the City of Phoenix and its employees related to police officer use of excessive force.

55. The City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police officer uses of force encourages the City of Phoenix's officers to use excessive force when it is not reasonable.

56. The City of Phoenix has a policy, custom, or practice of "purging" officer discipline records.

57. The purpose of the City of Phoenix's policy, custom, or practice of "purging" officer discipline records is to prevent the public and the victims of police excessive force from learning about the historical uses of unreasonable force, and other infractions, of the police officers involved in an incident of unreasonable force.

58. The purpose of the City of Phoenix's policy, custom, or practice of "purging" officer discipline records is to prevent victims of police excessive force from bringing lawsuits against the City of Phoenix and its employees related to police officer use of excessive force.

59. The City of Phoenix's policy, custom, or practice of "purging" officer discipline records encourages the City of Phoenix's officers to use excessive force when it is not reasonable.

60. Defendant City of Phoenix is responsible for training and supervising Phoenix Police Officers regarding interaction with a non-violent citizen who is either mentally ill or intoxicated because of drug use.

61. Defendant City of Phoenix has failed to properly train and supervise its police officers regarding Police officer interaction with a non-violent citizen who is either mentally ill or intoxicated because of drug use.

## COUNT ONE
### Assault and Battery

62. The foregoing paragraphs are incorporated as if fully set forth herein.

63. At all relevant times, the City of Phoenix police officers were acting in the course and scope of their employment for Defendant City of Phoenix.

64. The City of Phoenix police officers assaulted and battered Casey Wells.

65. The City of Phoenix police officers caused harmful or offensive contact to Casey by using excessive force which killed him.

66. The assault and battery was not justified.

67. The City of Phoenix ratified the assault and battery by the police officers.

68. The assault and battery was not justified and led to Casey's death.

69. Plaintiff is entitled to damages.

## COUNT TWO
### Negligence/Gross Negligence

70. The foregoing paragraphs are incorporated as if fully set forth herein.

71. Defendant City of Phoenix owes a duty of care to members of the public with whom they come into contact and/or investigate, including Casey Wells.

72. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers with respect to the reasonable use of force in situations such as these.

73. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers with respect to de-escalation techniques.

74. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers regarding interaction with non-violent citizens in a mentally ill state or intoxicated because of drug use.

75. As a result of these breaches, Defendant City of Phoenix caused Casey's death.

76. Defendant City of Phoenix and its officers and employees that participated in the incident with Casey Wells acted in concert with each other or pursuant to a common design.

77. Defendant City of Phoenix and its officers and employees that participated in the incident with Casey Wells failed to use reasonable care and recklessly disregarded obvious risks of harm to Casey Wells.

78. Defendant City of Phoenix and its officers and employees caused the death of Casey Wells by their failures to use reasonable care and by their reckless disregard for the obvious risks of harm to Casey Wells.

79. Defendant City of Phoenix is vicariously liable for the conduct of its employees for causing Casey's death.

80. As a direct result of Defendant City of Phoenix's negligent, grossly negligent, deliberately indifferent, willful, wanton, and/or reckless conduct, Casey was killed, and Plaintiff and all statutory beneficiaries of Casey sustained damages, including pain and suffering, grief, emotional distress, loss of support, loss of love and affection, and loss of enjoyment of life.

### COUNT THREE
**Wrongful Death**

81. The foregoing paragraphs are incorporated as if fully set forth herein.

82. The City of Phoenix police officers had a duty to use only necessary and reasonable force.

83. The officers breached their duties, despite knowing or having reason to know that Casey was or would be inappropriately subjected to an unreasonable risk of serious harm, injury, and death as a result of their actions and/or inactions, as identified by the allegations set forth in the paragraphs above.

84. The officers' breaches of their duties caused and/or contributed to cause Casey's wrongful death.

85. The officers were, at all times material hereto, acting within the course and scope of their employment with City of Phoenix and City of Phoenix is vicariously liable for their actions.

86. As a result of the officers' actions and inactions, Casey's survivors have been deprived of the continued companionship and society of their son and husband, and have suffered and will continue to suffer in the future a loss of love, affection, companionship, care, protection, guidance, as well as pain, grief, sorrow, anguish, stress, shock, and mental suffering, and have suffered damages in an amount to be proven at trial.

## COUNT FOUR
### Vicarious Liability

87. The foregoing paragraphs are incorporated as if fully set forth herein.

88. Pursuant to the theory of *respondeat superior*, Defendant City of Phoenix is responsible for the conduct of its officers and employees and is liable to Plaintiff for the damages resulting from their conduct.

89. Defendant City of Phoenix is responsible for the training and supervision of its officers and employees and is liable for the acceptance and ratification of the conduct of its officers, as complained of herein, as being consistent with their customs, practices, and policies.

90. Plaintiff is therefore entitled to recover damages from Defendant City of Phoenix for all claims arising from the actions, or inactions, of its officers resulting in the death of Casey Wells.

//
//
//

**WHEREFORE**, Plaintiff prays for judgment against the Defendants as follows:

A. For general damages, including but not limited to the loss of love, affection, companionship, and guidance resulting from the death of Casey Wells, pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future;

B. Punitive damages in an amount deemed just and reasonable;
C. For pre- and post-judgment interest to the extent permitted by law;
D. For attorneys' fees and taxable costs to the extent permitted by law; and
E. Such other relief as the Court deems just and proper.

DATED this 4th day of February, 2020.

**Burnett Law Office, PLC**

By: _____
Thomas A. Burnett, Esq.
Donal E. Burnett, Esq.
Attorneys for Plaintiff