# EXHIBIT 2

Thomas A. Burnett, Esq. (026509)
Donal E. Burnett, Esq. (028800)
**BURNETT LAW OFFICE, PLC**
1744 South Val Vista Drive, Suite 208
Mesa, Arizona 85204
Tel: (480) 347-9116
tom.burnett@burnettlawaz.com
don.burnett@burnettlawaz.com

Joel B. Robbins, Esq. (011065)
Jesse M. Showalter, Esq. (026628)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Tel: (602) 285-0100
joel@robbinsandcurtin.com
jesse@robbinsandcurtin.com
*Attorneys for Plaintiff*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| **LEI ANN STICKNEY**, on her own behalf and on behalf of all statutory beneficiaries of **CASEY WELLS**;<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF PHOENIX**, a municipality;<br><br>Defendant. | No. CV2020-091655<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Assigned to the Honorable David Palmer) |

Plaintiff, Lei Ann Stickney, on her own behalf and on behalf of the statutory beneficiaries of Casey Wells, for her First Amended Complaint ("FAC") against the Defendant named herein alleges as follows:

## **PARTIES**

1. Plaintiff, Lei Ann Stickney, is an adult female presently residing in the State of Arizona.

2. Plaintiff is the surviving mother of Casey Wells, and brings this action on her own behalf and as statutory trustee for all statutory beneficiaries pursuant to A.R.S. § 12-611, *et seq*.

3. Defendant City of Phoenix is a municipality and a political subdivision of the State of Arizona, organized and existing under the laws of the State of Arizona.

4. Joseph Seaquist is an individual and a citizen of Arizona.

5. At all times alleged in the FAC, Joseph Seaquist was a Police Officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law.

6. Travis Funston is an individual and a citizen of Arizona.

7. At all times alleged in the FAC, Travis Funston was a Police Officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law.

8. James Arnold is an individual and a citizen of Arizona.

9. At all times alleged in the FAC, James Arnold was a Police Officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law.

10. Robert Rodarme is an individual and a citizen of Arizona.

11. At all times alleged in the FAC, Robert Rodarme was a Police Officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law.

12. Frank Long is an individual and a citizen of Arizona.

13. At all times alleged in the FAC, Frank Long was a Police Officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law.

14. Ken Palmer is an individual and a citizen of Arizona.

15. At all times alleged in the FAC, Ken Palmer was a Police Officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law.

16. In this Complaint, Seaquist, Funston, Arnold, Rodarme, Long, and Palmer are referred to collectively as "the Officers."

## JURISDICTION AND VENUE

17. The amount in controversy exceeds the jurisdictional limitations of this Court.

18. As to Plaintiff's claims under Arizona state law, Plaintiff served a timely notice of claim pursuant to A.R.S. § 12-821.01 upon Defendant City of Phoenix. The notice of claim complied in all ways with the statute, was timely served, and is deemed denied by operation of statute.

19. The events that form the basis of this FAC occurred on or about February 4, 2019, in Maricopa County.

20. Venue is proper in the Superior Court in and for Maricopa County.

## FACTUAL ALLEGATIONS

21. On February 4, 2019, City of Phoenix police officers responded to calls reporting a naked man in the street on a residential street in Phoenix, Arizona.

22. The man was Plaintiff's son, Casey Wells.

23. Casey was naked and praying, or performing yoga, in the street.

24. Casey was unarmed.

25. Casey was obviously mentally disturbed whether because of mental illness or intoxication.

26. There was no report that Casey was violent or dangerous, he was simply a mentally disturbed man standing naked in the street.

27. When police officers respond to a non-violent call involving a citizen who is either mentally ill or intoxicated because of drug use, the officer(s) should take steps to keep the situation calm.

28. Where violence or destructive acts have not occurred, the officer(s) should avoid physical confrontation and should take the time to calm a citizen and assess the situation.

29. If it becomes necessary to restrain the citizen, an electronic control device, such as a taser, should not be used against citizens that are handcuffed/restrained.

30. City of Phoenix police officer Arnold arrived first on scene.

31. Approximately two minutes and four seconds later, Phoenix police officer Rodarme arrived on scene.

32. Within forty-four seconds of Officer Rodarme's arrival, he requested another unit.

33. Officers Arnold and Rodarme initiated a physical confrontation with Casey.

34. The Officers knew that Casey was not armed and that he had no access to weapons of any kind.

35. Casey posed no threat of harm to himself or those around him.

36. The Officers knew that Casey Wells was suffering from a mental psychosis, a drug induced delusion, or both.

37. Rather than take reasonable efforts to keep the situation calm, within minutes of approaching Casey Wells, Officers Arnold and Rodarme attempted to use physical force to arrest Casey.

38. Casey responded by spinning in circles and flailing his arms.

39. Officers Arnold and Rodarme continued to escalate the situation by using more and more force in an attempt to arrest Casey, who they knew was mentally disturbed and who they did not suspect had committed any sort of violent or dangerous crime.

40. Officer Seaquist then arrived on scene.

41. At some point shortly before Officer Seaquist arrived, or shortly after Officer Seaquist arrived, the Officers secured Casey Wells with handcuffs behind his back, lying on his stomach, naked, and on the asphalt.

42. Officers Funston and Long then arrived on scene.

43. Officer Palmer arrived at the scene and exited his vehicle at approximately 2:30 p.m.

44. Officer Palmer was wearing a city-issued Axon body camera.

45. At the time of Officer Palmers arrival, the Axon body camera shows that Casey had been subdued and handcuffed and was being held down on his stomach by between six or seven police officers.

46. The Axon body camera shows that one of the Officers is using his knee and body weight to apply pressure to Casey's upper back and neck, while Casey's hands are cuffed behind his back and his chest and stomach are flat on the ground.

47. The City of Phoenix and the Officers knew, or should have known, that applying force and weight to Casey's upper back while he was cuffed and faced down created an obvious risk of positional asphyxia, hypoxic injuries, and cardiac arrest.

48. The Axon body camera shows Officer Seaquist tasing Casey while Casey is not moving and while force is being applied to Casey's back.

49. The City of Phoenix and the Officers knew, or should have known, that tasing excited mentally disturbed subjects creates a risk of death.

50. The City of Phoenix and the Officers knew, or should have known, that repeatedly tasing any individual, creates a risk of death.

51. Officer Seaquist repeatedly and intentionally tased Casey while Casey was restrained, handcuffed, unarmed, and defenseless.

52. Officer Seaquist tased Casey a total of five times in a timeframe of one minute and thirty-five seconds.

53. One of the officers announced that Casey was purple with no pulse.

54. The Officers used such force on Casey that they crushed all four thyroid cartilage horns in Casey's neck.

55. Roughly twelve minutes from Officer Arnold's arrival on scene, Casey Wells is purple with no pulse.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax: (602) 265-0267

56. The Officers assaulted, battered, and killed Casey after he had already been handcuffed and subdued.

57. When paramedics arrived at the scene, they were able to administer epinephrine and Casey's pulse was recovered.

58. Casey was transported to John C. Lincoln Deer Valley Hospital where he was diagnosed with cardiopulmonary arrest, pulseless electrical activity, encephalopathy acute, systemic inflammatory response syndrome, acidosis, lactic acid increase, hypernatremia, and coagulopathy.

59. An EEG of Casey showed "severe, global cerebral dysfunction", with generalized epileptiform activity and multiple generalized electrographic seizures. A CT scan of his brain found "findings most compatible with severe hypoxic ischemic brain injury involving gray matter structures with effacement of basilar cisterns and slightly downward displacement and swelling of cerebellar tonsils".

60. As a result of the City of Phoenix and the Officers' actions, Casey was brain dead.

61. Two days later, on February 6, 2019, the hospital staff ordered a palliative care consult.

62. Casey's mother, Lei Ann Stickney, sat by Casey's side. She contacted loved ones and asked them to come give Casey their last goodbyes. On February 6, 2019, at 17:46 hours, Casey Wells was pronounced dead.

63. Defendant City of Phoenix is responsible for training and supervising Phoenix Police Officers regarding the reasonable use of force.

64. Defendant City of Phoenix has failed to properly train and supervise its police officers regarding the reasonable use of force.

65. The City of Phoenix has a policy, custom, or practice of training officers to "escalate" situations. That is, to use more force than is reasonably necessary or appropriate to respond to situations.

66. The City of Phoenix knows that its policy, custom, or practice of training officers to "escalate" situations results in unreasonable uses of force.

67. The City of Phoenix's policy, custom, or practice of training officers to "escalate" situations increases the incidence of uses of unreasonable force.

68. The City of Phoenix has a policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police officer uses of force.

69. The purpose of the City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police officer uses of force is to prevent the public and the victims of police violence from learning about the real facts involved in the uses of force.

70. The purpose of the City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police violence is to prevent victims of police violence from bringing lawsuits against the City of Phoenix and its employees related to police officer use of excessive force.

71. The City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police violence creates a culture of impunity and encourages the City of Phoenix's officers to use excessive, unnecessary and unreasonable force..

72. The City of Phoenix has a policy, custom, or practice of "purging" officer discipline records.

73. The purpose of the City of Phoenix's policy, custom, or practice of "purging" officer discipline records is to prevent the public and the victims of police violence from learning about the historical uses of unreasonable force, and other infractions, of the police officers involved in an incident of unreasonable force.

74. The purpose of the City of Phoenix's policy, custom, or practice of "purging" officer discipline records is to prevent victims of police excessive force from bringing lawsuits against the City of Phoenix and its employees related to police officer use of excessive force.

75. The City of Phoenix's policy, custom, or practice of "purging" office discipline records has created a culture of impunity that encourages the City of Phoenix's officers to use excessive force when it is not reasonable.

76. Defendant City of Phoenix is responsible for training and supervising Phoenix Police Officers regarding interaction with a non-violent citizen who is either mentally ill or intoxicated because of drug use.

77. Defendant City of Phoenix has failed to properly train and supervise its police officers regarding police officer interaction with the mentally disturbed, whether such individuals are suffering from mental illness or intoxication.

78. Defendant City of Phoenix has failed to properly train and supervise its police officers regarding the use of tasers, including the dangers of repeated uses of tasers, the dangers of using tasers on the mentally disturbed, and the fact that tasers should not be used on handcuffed and restrained individuals.

79. Defendant City of Phoenix has failed to properly train and supervise its police officers regarding the dangers of positional asphyxia.

## COUNT ONE - WRONGFUL DEATH
### (City of Phoenix)

80. The foregoing paragraphs are incorporated as if fully set forth herein.

81. At all relevant times, the Officers were acting in the course and scope of their employment for Defendant City of Phoenix.

82. The City of Phoenix is vicariously liable for the acts of the Officers.

83. The Officers assaulted and battered Casey Wells.

84. The Officers caused harmful or offensive contact to Casey by using excessive force which killed him.

85. The assault and battery was not justified.

86. The City of Phoenix ratified the assault and battery of the Officers.

87. The assault and battery was not justified and caused Casey's death and damaged Plaintiff.

88. Defendant City of Phoenix owes a duty of care to members of the public with whom they come into contact and/or investigate, including Casey Wells.

89. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers with respect to the reasonable use of force in situations such as these.

90. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers with respect to de-escalation techniques.

91. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers regarding interaction with non-violent citizens in a mentally disturbed state.

92. Defendant City of Phoenix breached its duty by failing to adequately train and supervise its officers regarding the use of tasers, including the dangers of using tasers on the mentally disturbed and the dangers of repeated taser use.

93. Defendant City of Phoenix breached its duty by failing to adequately train and supervise its officers regarding positional asphyxia.

94. As a result of these breaches, Defendant City of Phoenix caused Casey's death.

95. Defendant City of Phoenix and its officers and employees that participated in the incident with Casey Wells acted in concert with each other or pursuant to a common design.

96. Defendant City of Phoenix and its officers and employees that participated in the incident with Casey Wells failed to use reasonable care and recklessly disregarded obvious risks of harm to Casey Wells.

97. Defendant City of Phoenix and its officers and employees caused the death of Casey Wells by their failures to use reasonable care and by their recklessly disregard for the obvious risks of harm to Casey Wells.

98. Defendant City of Phoenix is vicariously liable for the conduct of its employees for causing the Casey's death.

99. As a direct result of Defendant City of Phoenix's intentional, negligent, grossly negligent, deliberately indifferent, willful, wanton, and/or reckless conduct, Casey was killed, and Plaintiff and all statutory beneficiaries of Casey sustained damages, including pain and suffering, grief, emotional distress, loss of support, loss of love and affection, and loss of enjoyment of life.

### **RULE 26.2(c)(3)(A)**

Pursuant to Rule 26.2(c)(3)(A), Arizona Rules of Civil Procedure, this case is properly assigned to Tier 3.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For general damages, including but not limited to the loss of love, affection, companionship, and guidance resulting from the death of Casey Wells, pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future, and economic losses and loss of income, hedonic damages, and Casey Wells' pre-death pain and suffering;

B. For special damages, including but not limited to the expenses of medical treatment, burial, and funeral;

C. For pre- and post-judgment interest to the extent permitted by law;

D. For attorneys' fees and taxable costs to the extent permitted by law; and

E. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED: May 22, 2020

**Burnett Law Office, PLC**

By: /s/ Thomas A. Burnett
Thomas A. Burnett
Donal A. Burnett
1744 S. Val Vista Drive, Suite 208
Mesa, Arizona 85204

///

|     |                                                    |
|-----|----------------------------------------------------|
| 2   | By:   /s/ Jesse M. Showalter                       |
| 3   |       Joel B. Robbins                              |
|     |       Jesse M. Showalter                           |
| 4   |       301 E. Bethany Home Road                     |
|     |       Suite B-100                                  |
| 5   |       Phoenix, Arizona 85012                       |
| 6   |       *Attorneys for Plaintiff*                    |

### CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020, I electronically transmitted the attached document to the Clerk's Office using the TurboCourt System for filing and transmittal of a Notice of Electronic Filing to the following TurboCourt registrants:

Thomas A. Burnett
Donal E. Burnett
Burnett Law Office, PLC
1744 S. Val Vista Drive, Suite 208
Mesa, Arizona 85204
tom.burnett@burnettlawaz.com
don.burnett@burnettlawaz.com
*Co-counsel for Plaintiff*

/s/ Julie W. Molera