# EXHIBIT 3

Thomas A. Burnett, Esq. (026509)
Donal E. Burnett, Esq. (028800)
**BURNETT LAW OFFICE, PLC**
1744 South Val Vista Drive, Suite 208
Mesa, Arizona 85204
Tel: (480) 347-9116
tom.burnett@burnettlawaz.com
don.burnett@burnettlawaz.com

Joel B. Robbins, Esq. (011065)
Jesse M. Showalter, Esq. (026628)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Tel: (602) 285-0100
joel@robbinsandcurtin.com
jesse@robbinsandcurtin.com
*Attorneys for Plaintiff*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| **LEI ANN STICKNEY**, individually and on behalf of all statutory beneficiaries of **CASEY WELLS**, and in her capacity as the personal representative of the Estate of **CASEY WELLS**;<br><br>Plaintiff,<br>v.<br><br>**CITY OF PHOENIX**, a municipality; **JAMES ARNOLD**, an individual; **ROBERT RODARME**, an individual; **KENNETH PALMER**, an individual; **JOSEPH SEAQUIST**, an individual; **DUSTIN HAYNES**, an individual; **SEAN YAMANE**, an individual; **FRANK LONG**, an individual; and **TRAVIS FUNSTON**, an individual;<br><br>Defendants. | No. CV2020-091655<br><br>**PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**(Filed With Permission)**<br><br>(Assigned to the Honorable David Palmer) |

1     Plaintiff, Lei Ann Stickney, on her own behalf and on behalf of the statutory beneficiaries of Casey Wells, and as the personal representative of the Estate of Casey Wells, for her Second Amended Complaint ("SAC") against the Defendant named herein alleges as follows:

## PARTIES

1. At the time of his death on February 6, 2019, Casey Wells was a 40-year-old citizen of the United States of America and a resident of Maricopa County, Arizona.



2. Phoenix police officers restrained Casey on the ground in handcuffs and hobbles, placed their knees on his back, and tased him until he died:



ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax: (602) 265-0267

3. Plaintiff, Lei Ann Stickney, is an adult female presently residing in the State of Arizona.

4. Plaintiff is the surviving mother of Casey Wells, and brings this action on her own behalf and as statutory trustee for all statutory beneficiaries pursuant to A.R.S. § 12-611, *et seq*.

5. Plaintiff also brings this action on behalf of the Estate of Casey Wells, for which she is the personal representative.

6. Doug Wright is an adult male presently residing in the State of Arizona. He is the surviving father of Casey Wells and is a statutory beneficiary pursuant to A.R.S. § 12-611, *et seq*.

7. Defendant City of Phoenix is a municipality and a political subdivision of the State of Arizona, organized and existing under the laws of the State of Arizona. It is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

8. Joseph Seaquist is an individual and a citizen of Arizona.

9. At all times alleged in the SAC, Joseph Seaquist was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

10. Travis Funston is an individual and a citizen of Arizona.

11. At all times alleged in the SAC, Travis Funston was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

12. James Arnold is an individual and a citizen of Arizona.

13. At all times alleged in the SAC, James Arnold was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

14. Robert Rodarme is an individual and a citizen of Arizona.

15. At all times alleged in the SAC, Robert Rodarme was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

16. Frank Long is an individual and a citizen of Arizona.

17. At all times alleged in the SAC, Frank Long was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

18. Kenneth Palmer is an individual and a citizen of Arizona.

19. At all times alleged in the SAC, Kenneth Palmer was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

20. Sean Yamane is an individual and a citizen of Arizona.

21. At all times alleged in the SAC, Sean Yamane was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

22. Dustin Haynes is an individual and a citizen of Arizona.

23. At all times alleged in the SAC, Dustin Haynes was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

24. In this SAC, Defendants Seaquist, Funston, Arnold, Rodarme, Long, Palmer, Yamane, and Haynes are referred to collectively as "the Officer Defendants."

## JURISDICTION AND VENUE

25. The amount in controversy exceeds the jurisdictional limitations of this Court.

26. As to Plaintiff's claims under Arizona state law, Plaintiff served a timely notice of claim pursuant to A.R.S. § 12-821.01 upon Defendant City of Phoenix on or about August 1, 2019. The notice of claim complied in all ways with the statute, was timely served, and is deemed denied by operation of statute.

27. The events that form the basis of this SAC occurred on or about February 4, 2019, in Maricopa County.

28. Venue is proper in the Superior Court in and for Maricopa County.

## FACTUAL ALLEGATIONS

### The Restraint Induced Death of Casey Wells

29. On February 4, 2019, City of Phoenix police officers responded to calls reporting a naked man in the street on a residential street in Phoenix, Arizona.

30. The man was Plaintiff's son, Casey Wells.

31. Casey was naked and praying, or performing yoga, in the street.

32. Casey was unarmed.

33. Casey was obviously mentally disturbed whether because of mental illness or intoxication.

34. There was no report that Casey was violent or dangerous, he was simply a mentally disturbed man standing naked in the street.

35. When police officers respond to a non-violent call involving a citizen who is either mentally ill or intoxicated because of drug use, the officer(s) should take steps to keep the situation calm.

36. Where violence or destructive acts have not occurred, the officer(s) should avoid physical confrontation and should take the time to calm a citizen and assess the situation.

37. If it becomes necessary to restrain the citizen, an electronic control device, such as a taser, should not be used against citizens that are handcuffed/restrained.

38. City of Phoenix police officer Defendant James Arnold arrived first on the scene at 2:19 p.m.

39. As Defendant Arnold approached, Casey stood still with his arms raised. He was yelling at the sky and "talking to God."



40. At 2:22 p.m., Phoenix police officer Defendant Robert Rodarme arrived on scene.

41. At 2:24 p.m., Officer Rodarme requested additional units.

42. Officers Arnold and Rodarme initiated a physical confrontation with Casey.

43. The officers knew that Casey was not armed and that he had no access to weapons of any kind.

44. Casey posed no threat of harm to himself or those around him.

45. The officers knew that Casey Wells was suffering from a mental psychosis, a drug induced delusion, or both.

46. Rather than take reasonable efforts to keep the situation calm, within minutes of approaching Casey Wells, Officers Arnold and Rodarme attempted to use physical force to arrest Casey.

47. Officers Arnold and Rodarme grabbed Casey's arms and attempted to pull his arms behind his back to handcuff him.

48. Casey responded by spinning in circles, grunting, and flailing his arms and legs.

49. Officers Arnold and Rodarme continued to escalate the situation by using more and more force in an attempt to arrest Casey, who they knew was mentally disturbed and who they did not suspect had committed any sort of violent or dangerous crime.

50. Officer Arnold wrapped his arms around Casey as Officer Rodarme grabbed Casey from behind. Together, Officers Arnold and Rodarme took Casey to the ground, causing him to hit the back of his head on the asphalt.

51. As Casey lay on his back, Officer Arnold attempted to pin Casey to the ground by pressing his elbow into Casey's chest.

52. Defendant Officer Joseph Seaquist then arrived on scene.

53. Casey was still laying on his back in the middle of the street.

54. Officers Arnold, Rodarme, and Seaquist rolled Casey onto his stomach, and, in doing so, Casey's left arm became pinned beneath his body.

55. Casey flailed his legs, and Officer Seaquist grabbed Casey's legs and bent them toward his buttocks.

56. Defendant Officers Funston and Long then arrived on scene.

57. At that time, Officers Arnold, Rodarme, and Seaquist were holding Casey face-down on the asphalt.

58. Officers Funston and Long joined in the force being applied to Casey. Officer Funston restrained Casey's legs, and Officer Long restrained his arms.

59. As Casey lay face down with five officers on top of him and his left arm still trapped under his body, Officer Seaquist deployed his Taser into Casey's back.

60. The Taser deployment "locked [Casey] up," and his left arm remained pinned beneath his body.

61. Officer Seaquist deployed his Taser into Casey three more times as Casey lay face-down with the officers on top of him.

62. After the fourth Taser deployment, the officers placed Casey in handcuffs behind his back.

63. Defendant Officers Haynes, Yamane, and Palmer then arrived on the scene.

64. Officers Haynes and Yamane assisted the other Officer Defendants who were still applying pressure to Casey as he lay face-down, handcuffed, on the ground.

65. Officer Haynes and Officer Funston applied a RIPP restraint (a strap used to immobilize the legs) and attached the RIPP restraint clip to the handcuff chain.

66. Officer Yamane restrained Casey's legs as the RIPP restraint was applied.

67. Officer Palmer watched as the other Officer Defendants restrained Casey on the ground. He did not provide assistance to Casey, attempt to de-escalate the other officers' use of force, or intervene on Casey's behalf.

68. As Casey was handcuffed and laying face-down on the ground and at least six of the Officer Defendants were applying pressure to his neck, back, and legs, Officer Seaquist deployed his Taser into Casey for a fifth time.

69. The Officer Defendants jointly participated in the excessive and unreasonable force used against Casey, and at no time did any Officer Defendant attempt to de-escalate the other officers' use of force or intervene on Casey's behalf.

70. Casey was unarmed and did not present a risk of serious bodily injury or death to any Officer Defendant or any other person.

71. Officer Palmer was wearing a city-issued Axon body camera.

72. At the time of Officer Palmer's arrival, the Axon body camera shows that Casey had been subdued and handcuffed and was being held down on his stomach by at least six of the Officer Defendants while a seventh officer watched.



73. The Axon body camera shows that one of the Officer Defendants was using his knee and body weight to apply pressure to Casey's upper back and neck, while Casey's hands were cuffed behind his back and his chest and stomach were flat on the ground.



74. The City of Phoenix and the Officer Defendants knew, or should have known, that applying force and weight to Casey's upper back while he was cuffed and faced down created an obvious risk of positional asphyxia, hypoxic injuries, and cardiac arrest.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax: (602) 265-0267

75. The Axon body camera shows Officer Seaquist tase Casey while Casey was not moving and while force was being applied to Casey's back.

76. The City of Phoenix and the Officer Defendants knew, or should have known, that tasing excited, mentally disturbed subjects creates a risk of death.

77. The City of Phoenix and the Officer Defendants knew, or should have known, that repeatedly tasing any individual creates a risk of death.

78. Officer Seaquist repeatedly and intentionally tased Casey while Casey was restrained, handcuffed, unarmed, and defenseless.

79. Officer Seaquist tased Casey a total of five times in a timeframe of one minute and thirty-five seconds.

80. At approximately 2:31 p.m., one of the officers announced that Casey was purple with no pulse and was not breathing.

81. The officers used such force on Casey that they crushed all four thyroid cartilage horns in Casey's neck.

82. Roughly twelve (12) minutes from Officer Arnold's arrival on scene, Casey Wells was unresponsive, not breathing, and had no pulse.

83. The Officer Defendants assaulted, battered, and killed Casey after he had already been handcuffed and subdued.

84. When paramedics arrived at the scene, they were able to administer epinephrine and Casey's pulse was recovered.

85. Casey was transported to John C. Lincoln Deer Valley Hospital where he was diagnosed with cardiopulmonary arrest, pulseless electrical activity, encephalopathy acute, systemic inflammatory response syndrome, acidosis, lactic acid increase, hypernatremia, and coagulopathy.

86. An EEG of Casey showed "severe, global cerebral dysfunction", with generalized epileptiform activity and multiple generalized electrographic seizures. A CT scan of his brain found "findings most compatible with severe hypoxic ischemic brain injury

involving gray matter structures with effacement of basilar cisterns and slightly downward displacement and swelling of cerebellar tonsils".

87. As a result of the City of Phoenix and the Officer Defendants' actions, Casey was brain dead.

88. Two days later, on February 6, 2019, the hospital staff ordered a palliative care consult.

89. Casey's mother, Lei Ann Stickney, sat by Casey's side. She contacted loved ones and asked them to come give Casey their last goodbyes. On February 6, 2019, at 17:46 hours, Casey Wells was pronounced dead.

90. The Maricopa County Medical Examiner determined that Casey's death was caused by cardiac dysrhythmia and arrest due to methamphetamine intoxication, acute psychosis, arteriosclerotic cardiovascular disease, and physical restraint with prone positioning and possible extrinsic chest compression.

91. An autopsy revealed multiple perimortem fractures of Casey's thyroid cartilage: (1) the right superior horn of the thyroid cartilage was fractured into two segments; (2) the right superior lamina of the thyroid cartilage was fractured obliquely; (3) the right and left inferior horns are fractured; and (4) reddish discoloration was found in two of the fractures and in the lamina of the cricoid cartilage.

**Defendant City of Phoenix's Policies, Customs, and Procedures**

92. Defendant City of Phoenix is responsible for training and supervising Phoenix Police Officers regarding the reasonable use of force.

93. Defendant City of Phoenix has failed to properly train and supervise its police officers regarding the reasonable use of force.

94. The City of Phoenix has a policy, custom, or practice of training officers to "escalate" situations. That is, to use more force than is reasonably necessary or appropriate to respond to situations.

95. The City of Phoenix knows that its policy, custom, or practice of training officers to "escalate" situations results in unreasonable uses of force.

96. The City of Phoenix's policy, custom, or practice of training officers to "escalate" situations increases the incidence of uses of unreasonable force.

97. The City of Phoenix has a policy, custom, or practice of training and allowing officers to use certain submission techniques, including prone positioning and the carotid control technique, which pose a significant risk of asphyxiation and death and which therefore result in unreasonable uses of force.

98. The City of Phoenix's policy, custom, or practice of training and allowing officers to utilize submission techniques such as prone positioning and the carotid control technique increases the incidence of uses of unreasonable force.

99. On June 9, 2020—in response to calls for police reform sparked by the asphyxiation death of George Floyd at the hands of Minneapolis police officers—City of Phoenix Police Chief Jeri Williams announced that the Phoenix Police Department would stop using the carotid control technique and would stop training officers on the technique.

100. The City of Phoenix has a policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police officer uses of force.

101. The purpose of the City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police officer uses of force is to prevent the public and the victims of police violence from learning about the real facts involved in the uses of force.

102. The purpose of the City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police violence is to prevent victims of police violence from bringing lawsuits against the City of Phoenix and its employees related to police officer use of excessive force.

103. The City of Phoenix's policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving police violence creates a culture of impunity and encourages the City of Phoenix's officers to use excessive, unnecessary, and unreasonable force.

104. The City of Phoenix has a policy, custom, or practice of "purging" officer discipline records.

105. The purpose of the City of Phoenix's policy, custom, or practice of "purging" officer discipline records is to prevent the public and the victims of police violence from learning about the historical uses of unreasonable force, and other infractions, of the police officers involved in an incident of unreasonable force.

106. The purpose of the City of Phoenix's policy, custom, or practice of "purging" officer discipline records is to prevent victims of police excessive force from bringing lawsuits against the City of Phoenix and its employees related to police officer use of excessive force.

107. The City of Phoenix's policy, custom, or practice of "purging" office discipline records has created a culture of impunity that encourages the City of Phoenix's officers to use excessive force when it is not reasonable.

108. Defendant City of Phoenix is responsible for training and supervising Phoenix police officers regarding interaction with a non-violent citizen who is either mentally ill or intoxicated because of drug use.

109. Defendant City of Phoenix has failed to properly train and supervise its police officers regarding police officer interaction with the mentally disturbed, whether such individuals are suffering from mental illness or intoxication.

110. Defendant City of Phoenix has failed to properly train and supervise its police officers regarding the use of tasers, including the dangers of repeated uses of tasers, the dangers of using tasers on the mentally disturbed, and the fact that tasers should not be used on handcuffed and restrained individuals.

111. Defendant City of Phoenix has failed to properly train and supervise its police officers regarding the dangers of positional asphyxia.

# COUNT ONE - WRONGFUL DEATH
### (City of Phoenix)

112. The foregoing paragraphs are incorporated as if fully set forth herein.

113. At all relevant times, the Officer Defendants were acting in the course and scope of their employment for Defendant City of Phoenix.

114. The City of Phoenix is vicariously liable for the acts of the Officer Defendants.

115. The Officer Defendants assaulted and battered Casey Wells.

116. The Officer Defendants caused harmful or offensive contact to Casey by using excessive force which killed him.

117. The assault and battery was not justified.

118. The City of Phoenix ratified the assault and battery of the Officer Defendants.

119. The assault and battery was not justified and caused Casey's death and damaged Plaintiff.

120. Defendant City of Phoenix owes a duty of care to members of the public with whom they come into contact and/or investigate, including Casey Wells.

121. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers with respect to the reasonable use of force in situations such as these.

122. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers with respect to de-escalation techniques.

123. Defendant City of Phoenix breached this duty by failing to adequately train and supervise their officers regarding interaction with non-violent citizens in a mentally disturbed state.

124. Defendant City of Phoenix breached its duty by failing to adequately train and supervise its officers regarding the use of tasers, including the dangers of using tasers on the mentally disturbed and the dangers of repeated taser use.

125. Defendant City of Phoenix breached its duty by failing to adequately train and supervise its officers regarding positional asphyxia.

126. As a result of these breaches, Defendant City of Phoenix caused Casey's death.

127. Defendant City of Phoenix and its officers and employees that participated in the incident with Casey Wells acted in concert with each other or pursuant to a common design.

128. Defendant City of Phoenix and its officers and employees that participated in the incident with Casey Wells failed to use reasonable care and recklessly disregarded obvious risks of harm to Casey Wells.

129. Defendant City of Phoenix and its officers and employees caused the death of Casey Wells by their failures to use reasonable care and by their recklessly disregard for the obvious risks of harm to Casey Wells.

130. Defendant City of Phoenix is vicariously liable for the conduct of its employees for causing the Casey's death.

131. As a direct result of Defendant City of Phoenix's intentional, negligent, grossly negligent, deliberately indifferent, willful, wanton, and/or reckless conduct, Casey was killed, and Plaintiff and all statutory beneficiaries of Casey sustained damages, including pain and suffering, grief, emotional distress, loss of support, loss of love and affection, and loss of enjoyment of life.

## COUNT TWO – 42 U.S.C. § 1983
**Violation of Fourth Amendment Right to be Free from Unlawful Seizures and Excessive Force**
**(Officer Defendants)**

132. The foregoing paragraphs are incorporated as if fully set forth herein.

133. Casey Wells had a Fourth Amendment right to be free from unlawful searches and seizures and from excessive force.

134. The Officer Defendants violated Casey Wells' Fourth Amendment rights when, acting in concert with one another, they restrained him in a prone position for longer than reasonably necessary.

135. Officer Seaquist violated Casey Wells' Fourth Amendment rights when he tased Casey repeatedly while he was subdued, restrained, and laying on his stomach.

136. The Officer Defendants violated Casey Wells' Fourth Amendment rights when, acting in concert with one another, they applied such significant pressure to his neck and chest that his thyroid cartilage was fractured in multiple places and he suffered cardiac arrest subsequent to positional asphyxia.

137. The Officer Defendants violated Casey Wells' Fourth Amendment rights when they failed to de-escalate or disengage the other officers from their use of unreasonable and excessive force.

138. The Fourth Amendment violations of all of the Officer Defendants were independent moving forces of Casey Wells' death.

139. Because the Officer Defendants' actions were done knowingly, intentionally, and maliciously, Plaintiff is entitled to recover compensatory and punitive damages.

## COUNT THREE – 42 U.S.C. § 1983
### Violation of Fourteenth Amendment Right to Familial Society and Companionship
### (Officer Defendants)

140. The foregoing paragraphs are incorporated as if fully set forth herein.

141. The reckless, intentional, and deliberate acts and omissions of the Officer Defendants were the direct legal cause of the deprivation of Lei Ann Stickney's and Doug Wright's constitutionally protected rights under the Fourteenth Amendment to the care, companionship, and familial society of their son, Casey Wells.

142. The acts and omissions of the Officer Defendants were committed knowingly, intentionally, and maliciously, and for the purpose of causing harm.

## COUNT FOUR – 42 U.S.C. § 1983
### *Monell* Claims for Violation of Fourth and Fourteenth Amendment Rights
### (City of Phoenix)

143. The foregoing paragraphs are incorporated as if fully set forth herein.

144. The City of Phoenix was deliberately indifferent to the proper training of their employees, including the Officer Defendants, regarding the appropriate use of force.

145. The City of Phoenix failed to train its officers regarding the proper use of force, including submission techniques that pose a risk of serious injury or death to the

subject, the risk of positional asphyxia, and the risk of repeated use of Tasers, particularly when deployed against individuals who are mentally disturbed, restrained, or handcuffed.

146. The City of Phoenix failed to train its officers regarding proper interactions with individuals who are mentally disturbed, whether because of mental illness or intoxication.

147. The City of Phoenix had policies, customs, or procedures that were deliberately indifferent to the rights of citizens to be free from excessive and unreasonable force.

148. The City of Phoenix had policies, customs, or procedures that encouraged police officers to escalate situations and allowed them to utilize submission techniques which posed a significant risk of injury or death, thereby using more force than reasonably necessary.

149. The City of Phoenix created a culture of impunity that encouraged officers to use deadly force, by purging officer discipline records and delaying or slowing the release of information regarding use of force incidents.

150. The City of Phoenix was deliberately indifferent to the Fourth and Fourteenth Amendment rights of members of the public, including Casey Wells, Lei Ann Stickney, and Doug Wright.

151. The City of Phoenix's unconstitutional policies, customs, and procedures caused the deprivations of Casey Wells' rights under the Fourth Amendment to the United States Constitution.

152. The City of Phoenix's unconstitutional policies, customs, and procedures caused the deprivation of Lei Ann Stickney's and Doug Wright's rights to familial society and companionship under the Fourteenth Amendment to the United States Constitution.

153. The City of Phoenix is liable for all damages arising from the constitutional violations it caused.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax: (602) 265-0267

**RULE 26.2(c)(3)(A)**

Pursuant to Rule 26.2(c)(3)(A), Arizona Rules of Civil Procedure, this case is properly assigned to Tier 3.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For general damages, including but not limited to the loss of love, affection, companionship, and guidance resulting from the death of Casey Wells, pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future, and economic losses and loss of income, hedonic damages, and Casey Wells' pre-death pain and suffering;

B. For special damages, including but not limited to the expenses of medical treatment, burial, and funeral;

C. For punitive damages against the Officer Defendants;

D. For pre- and post-judgment interest to the extent permitted by law;

D. For attorneys' fees and taxable costs under 42 U.S.C. § 1988 to the extent permitted by law; and

E. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED: June 24, 2020

        **ROBBINS & CURTIN, p.l.l.c.**

        By: /s/ Jesse M. Showalter
           Joel B. Robbins
           Jesse M. Showalter
           301 E. Bethany Home Road
           Suite B-100
           Phoenix, Arizona 85012
           *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2020, I electronically transmitted the attached document to the Clerk's Office using the TurboCourt System for filing and transmittal of a Notice of Electronic Filing to the following TurboCourt registrants:

Kathleen L. Wieneke
Christina Retts
Wieneke Law Group, PLC
1095 W. Rio Salado Parkway, Suite 209
Tempe, Arizona 85281
kwieneke@wienekelawgroup.com
cretts@wienekelawgroup.com
*Attorneys for Defendants*

Thomas A. Burnett
Donal E. Burnett
Burnett Law Office, PLC
1744 S. Val Vista Drive, Suite 208
Mesa, Arizona 85204
tom.burnett@burnettlawaz.com
don.burnett@burnettlawaz.com
*Co-counsel for Plaintiff*

/s/ Julie W. Molera