Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
WIENEKE LAW GROUP, PLC
1095 West Rio Salado Parkway, Suite 209
Tempe, Arizona 85281
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com

*Attorneys for Defendants City of Phoenix, Arnold, Rodarme, Palmer, Seaquist, Haynes, Yamane, Long and Funston*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Lei Ann Stickney, individually and on behalf of all statutory beneficiaries of Casey Wells, and in her capacity as the personal representative of the Estate of Casey Wells;<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, a municipality; James Arnold, an individual; Robert Rodarme, an individual; Kenneth Palmer, an individual; Joseph Seaquist, an individual; Dustin Haynes, an individual; Sean Yamane, an individual; Frank Long, an individual; and Travis Funston, an individual;<br><br>Defendants. | NO. 2:20-cv-1401-SMB-CDB<br><br>**DEFENDANT CITY OF PHOENIX'S MOTION TO DISMISS** |

Pursuant to Fed. R. Civ. Pro. 12(b)(6) and Rule 8, Defendant City of Phoenix ("Defendant" or "City") moves to dismiss the wrongful death *respondeat* superior wrongful death assault and battery claim and Plaintiff's *Monell* claim based upon numerous legal failings.[1] Moreover, based upon Rule 8, the new references to Mr. Floyd—appearing for the first time in the Second Amended Complaint—have no place in this this litigation.

---

[1] Prior to filing this Motion to Dismiss, the Defendant conferred with Plaintiff's counsel regarding dismissal of the claims.

## I. BACKGROUND

This lawsuit arises out of an interaction between Phoenix Police Officers and suspect, Casey Wells, whose conduct of stripping down naked and performing "yoga" and talking to god, in a residential neighborhood, in which he did not live and close to the time that children would be returning home to school, generated multiple 911 calls. *See* Plaintiff's Second Amended Complaint (SAC) at ¶ 39. Plaintiff contends that the officers should have known that Wells was either intoxicated or mentally ill.[2] *Id.* at ¶ 45. Plaintiff asserts that the officers used excessive force, in the form of a physical struggle and Taser applications against Wells. *Id.* at ¶ 42, 46, 47, 50, 68, 69, 76, and 78.

As it relates to state law claims, Plaintiff has several theories of wrongful death liability in her Amended Second Complaint. First, Plaintiff contends that the individual officers, "assaulted, battered, and killed Casey after he had already been handcuffed and subdued." *Id.* at ¶ 83. She asserts that the City of Phoenix is vicariously liable for this conduct. *Id.* at ¶¶ 114 and 130. Second, Plaintiff claims that the City of Phoenix is directly liable for negligent training and supervision of the Defendant officers.[3] *Id.* at ¶ 125.

Plaintiff also asserts federal claims premised upon *Monell* liability for "unconstitutional polices, customs, and procedures." *Id.* at ¶¶ 143-153. These allegations, however, are non-specific, conclusory, boilerplate, and based upon this single isolated incident.

---

[2] Plaintiff, however, knows that the decedent was under the influence of methamphetamine, as reported in toxicology reports and listed by the Medical Examiner as a cause of death. *See* Plaintiff's SAC at ¶ 90. Witnesses reported that the decedent long struggled with drug abuse. *See Fernandez v. Cooper City*, 207 F.Supp.2d 1371, 1379-80 (S.D.Fl. 2002) ("The prone restraint, pressure on the upper torso (presumably from one of the officer's knees being pressed to [the decedent's] back, handcuffing, and struggle were all the result of [the decedent's] illegal, physical, and prolonged resistance.")

[3] Within her Amended Second Complaint, Plaintiff uses various "terms of art," that only apply in the context of a federal Fourth Amendment *Monell* claim and are inapplicable to the state law claims—i.e. "policies and customs," "culture of impunity." *See Monell v. New York City Social Services,* 436 U.S. 658 (1978) (a municipality can only be held liable if its widespread policies, customs, or culture was unconstitutional and the moving force behind an alleged constitutional violation).

## II. LAW AND ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility is more than a "sheer possibility that a defendant has acted unlawfully." *Id*. If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent," they are not plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In reviewing a Rule 12(b)(6) motion, a court need not accept as true "conclusory statements" or "legal conclusions," *Iqbal,* 556 U.S. at 678, nor must it draw "unreasonable inferences" or "unwarranted deductions of fact," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### A. *Ryan v. Napier* and A.R.S. § 12-820.05 Preclude any *Respondeat* Superior Theory Against the City for Allegations of Officers' Intentional Use of Force.

In *Ryan v. Napier*, the Arizona Supreme Court addressed the viability of a negligence claim against a police officer for intentional use of force. The officer in question intentionally released a K-9, which bit the plaintiff. The police response started when plaintiff swerved into the opposite lane and nearly collided with a patrol car. The deputy began pursuing plaintiff, who did not immediately stop. Other deputies deployed stop sticks into the plaintiff's projected path—the disable his tires—but he pulled over before hitting them. Plaintiff refused to follow directions, started his car, drove over the sticks, and then stopped the car again. When he got out, plaintiff was staggering. He was warned "stop or you will be bitten," and the deputy intentionally released the K-9 after observing non-compliance. It was later determined that the plaintiff was diabetic and suffering a severe hypoglycemic event. As a result, "he lacked cognitive function to understand what was happening or respond to police commands." 245 Ariz. 58.

Plaintiff sued the County and Sheriff based upon the intentional use of force under a theory of vicarious liability. In addressing the claim of excessive force, the Court first noted

that "negligence and intent are mutually exclusive grounds for liability." *Id*. at 60. The Court held that that "negligent use of intentionally inflicted force" is **not** a cognizable claim and also that there can be no negligence claim related to "a law enforcement officer's 'evaluation' of whether to intentionally use force against another person." *Id*. The court reasoned as follows:

> In short, Klein's internal evaluation of whether to release Barry and his decision to do so was part and parcel of his intent to inflict harmful or offensive contact on McDonald. *Cf. Latits v. Phillips,* 298 Mich. App. 109, 826 N.W.2d 190, 196 (Mich. Ct. App. 2012) ("[T]he claim that defendant failed to appreciate that [plaintiff] did not pose a risk of harm may have some bearing on whether defendant made the proper decision to shoot, but it does not alter the fact that it was an intentional decision to shoot.").

*Id*. at 60-61. In addition to finding that an excessive force claim cannot be pled as a negligence theory, the Court also addressed *respondeat* superior claims against an entity for intentional torts:

> We are further persuaded because permitting negligence liability to rest on an officer's internal evaluation of the need for intentionally inflicted force could permit plaintiffs to "plead around" statutory provisions that apply only to intentional tort claims. First, a public entity, like the Pima County Sheriff's Office, is immune from liability for damages caused by an employee's felony act unless the entity knew of the employee's propensity to commit such acts. *See* A.R.S. § 12-820.05; *Gallagher v. Tucson Unified Sch. Dist.*, 237 Ariz. 254, 257 ¶ 10, 349 P3d 228 (App. 2015). Similarly, the public entity is not required in that circumstance to indemnify the employee for any liability imposed. See A.R.S. § 41-621(L). Thus, if Klein's intentional release of Barry on McDonald was unjustified and consequently determined to be an aggravated assault, see A.R.S. §§ 13-1203 (A), -1204(A), the Sheriff would be immune from liability, unless he knew that Klein had a propensity to act as he did, and would not be required to indemnify Klein…Second, statutory presumptions are triggered when a law enforcement officer intentionally uses physical force to arrest or capture a suspect and the suspect is injured. The officer is "presumed to [have been] acting reasonably" in using physical force. A.R.S. § 12-716(A)(1). And the officer's employer is "presumed to have reasonably hired and trained" its officers to use that physical force. *Id*. § 12-716(A)(1). A negligence action based on Klein's evaluation of the need for force avoided these provisions. But the applicability of legislatively mandated immunity, insurance, and evidentiary presumption provisions should not depend on clever pleading.

4

*Id*. at 61-62. See also *Barraza v. United States*, 2020 U.S. Dist. LEXIS 81200 (D.Ariz. 2020) (citing *Ryan v. Napier* as the basis for the holding that Taser—and claim that trigger was held for too long—was an intentional use of force and "the action directly resulting from that decision (i.e. holding the trigger) cannot be separately characterized as negligence.")

> **B.** **Plaintiff's State Law Training, Supervision, and Ratification Claims Against the City of Phoenix Fail.**

Plaintiff's state law training and supervision claims fall into two general categories: (1) training that allegedly would have changed the officers' internal decision-making relative to force; and (2) "transparency" claims wholly unrelated to these particular officers, but generally relating to records retention and litigation. Plaintiff also baldly, without facts, contends that the City of Phoenix "ratified" the officers' conduct—a term of art relating to Section 1983 claims, not state law claims. In analyzing the Plaintiff's state law theories, the court need not accept "conclusory statements." *See Ashcroft v. Iqbal*. The theories falling into these three categories fail.

First, most of these theories represent an "artful" attempt to plead around the language of A.R.S. 12-820.05, which immunizes entities from liability for losses arising out of felony acts of an employee. *See Fernandez v. City of Phoenix*, 2012 U.S. Dist. LEXIS 85268 (D.Ariz. 2012) (City immune from liability regardless of whether the officer was convicted—in claim that officer unlawfully shot a citizen—on the basis of A.R.S. 12-820.05: "whether the City is directly or merely vicariously liable, the loss is the same, and the City is immune unless it knew of Chrisman's propensity to commit the act."); *Doe v. Dickenson*, 615 F.Supp. 2d 1002, 1015 n. 8 (D.Ariz. 2009) (because the entity was entitled to immunity based upon A.R.S. § 12-820.05, the court did not need to address the insufficiency of the evidence arguments on negligent training and supervision claims before granting summary judgment on all state law claims). In *Gallagher v. Tucson Unified Sch. Dist.*, 237 Ariz. 254 (App.Div. 2 2015), the Court addressed whether an entity could be held liable, on a negligent hiring, retention, and supervision claim for the alleged felony conduct

of an employee in molesting a student. In concluding that the entity could not, the Court noted that the "losses" that the plaintiff sought to recover through their vicarious and direct liability claims "arose out of and are directly attributable to" the felony actor's conduct. *Gallagher* was cited, with approval, in *Ryan v. Napier*. Here, Plaintiff's training, supervision, and ratification theories "arise out of and are directly attributable to the officers and, as a result, the theories are barred.

Second, theories related to internal decision making connected to the intentional use of force—that the officers should have evaluated the need to use force differently, failed to appreciate the dangerousness of the plaintiff, etc.—are the precise type of "artful" pleading that was rejected in *Ryan v. Napier* and that attempts to work around the presumptions of A.R.S. § 12-716.

Third, wrongful death claims—a wrongful death claim is a creature of statute, and as a result, must be strictly construed. *See* A.R.S. § 12-611; *Shoenrock v. Cigna Health Plan (ABC-HMO, Inc.),* 148 Ariz. 548 (App. Div. 1. 1985). Plaintiff bears the burden of proving that Wells' death was caused by the City's wrongful acts. *See* A.R.S.§ 12-611. Here, causation is entirely lacking for any "transparency" claims. *See Shepard v. United States*, 587 F.Supp. 1525 (D.Ariz. 1984). Thus, to the extent that any of the Plaintiff's theories survive the infirmaries outlined above, nothing in the "facts" alleged by Plaintiff establish that any of the responding officers had been disciplined before, had knowledge of other officers being disciplined and their files purged, knew anything about the City's response time for police reports, knew anything about any other officers' discipline or lack thereof, or had any knowledge about whether any "victims" were discouraged or prevented from bringing lawsuits. How alleged administrative actions—unrelated to the officers at the scene—could have "caused" them—in their internal decision-making process—to use force is unknown.

## C. **The _Monell_ Claim Fails.**[4]

"[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

To prevail on a *Monell* claim based upon a purported policy and custom, Plaintiff must prove that the alleged constitutional violations were committed pursuant to a formal governmental policy, or a longstanding practice or custom which is the City's standard operating procedure. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Such a practice or custom, must be so persistent, widespread, and repeated as to amount to deliberate indifference to the rights of persons with whom the police come into contact. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Trevino*, 99 F.3d at 918 (liability may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy).

Training claims can only be successful in "limited circumstances" where the failure to train evidences "deliberate indifference" such that the shortcoming can properly be thought of as a "policy or custom." *See City of Canton*, 489 U.S. at 387. Plaintiff must also establish that the deficiency was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation. The Supreme Court has recognized several important principles

---

[4] Plaintiff's *Monell* claim is brought under the Fourth and Fourteenth Amendment. Where there is a specific amendment applicable—such as the Fourth Amendment to excessive force cases—a Fourteenth Amendment claim may not be asserted. Moreover, to the extent that Plaintiffs contend that this *Monell* claim relates to their Familial Association Claim, if such a claim even exists, Plaintiff must meet a heightened standard of purpose to harm related to a City policy, custom, training, that was deliberately indifferent to family relationships. *See Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

applicable to this case: (1) "that a particular officer may be unsatisfactorily training will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than the faulty training program;" (2) liability will not lie where an otherwise sound program has "occasionally been negligently administered;" (3) liability will not attach if it can be proven that an injury could have been avoided if an officer had better or more training because "[s]uch a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program…;" (4) "…plainly adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or legal basis for holding the city liable." *Id*. at 390-91. Isolated instances of alleged training deficiencies, not program wide, may not support liability. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

In *Fernandez v. Chrisman*, Judge Martone carefully analyzed *Monell* allegations of the same type asserted by the plaintiffs in this case and dismissed them. *See* 2:11-cv-02001-FJM, Doc. 71. Like this case, the *Fernandez* plaintiffs made training, hiring, supervision, and custom and policy claims, which were boilerplate, conclusory, and not supported by sufficient facts. For example, Plaintiff fails to allege facts identifying the specific inadequacy in the City's training program related to the use of force as it relates to each of the uses of force alleged. As it related to a supervision claim, the Court noted that there were no facts that would plausibly show that the officer was "prone to pepper spray, tase, and shoot an unarmed man without provocation." *Id*. at p. 5. The Plaintiff has failed to allege any facts showing how the City's alleged training, policy, and supervision was the moving force behind or substantially contributed to each of the Defendant officer's actions, some of whom are identified as arriving mid-struggle and having limited contact with the decedent.

As the Court noted in *Martinez v. Hain*, 2016 U.S.Dist. LEXIS 171726 (N.D.Ill. 2016), in dismissing boilerplate *Monell* allegations:

> '[t]he bulk of [Plaintiffs'] "facts" are just conclusion statements—catch phrases exhumed from other successful Monell cases, strung together in a kitchen-sink pleading

8

> approach—that have become all too common in *Monell* claims raised in non-pro-se § 1983 cases.' *Maglaya v. Kumiga*, 2015 U.S. Dist. LEXIS 101217 (N.D.Ill. 2015). A plaintiff cannot allege a single transgression, add vague boilerplate that this transgression resulted from a 'widespread practice,' and then proceed to discovery in the hopes of finding factual support for a *Monell* claim. *Id*. see also *Falk*, 973 F.Supp. 2d at 863 ('Plaintiff names the wrongs she suffered and alleges that they resulted from a policy or custom. These bare allegations of a policy or custom are not entitled to the presumption of truth.')…Here, there are no factual allegations about, for example, what specific 'aggressive techniques' Sheriff Kramer 'trains and encourages its employees to use' (other than 'illegal' ones), whether these specific 'techniques' have resulted in similar complaints against Kane County Sheriff's officers, or whether any of those 'techniques' were actually employed during the incidents involving Plaintiffs…Plaintiffs' claim that the Sheriff's employees 'commonly use techniques' such a 'conducting illegal searches' and 'arresting persons absent probable cause' is equivalent to an allegation that there were widespread illegal practices, which were widespread and illegal. Neither allegation has factual content. In fact, Plaintiffs' allegations are nearly indistinguishable from Annan, where the plaintiff alleged that a municipality 'maintains a policy whereby officers use excessive force to arrest individuals with no probable cause or reasonable suspicion warranting such.' *Annan*, 2013 U.S. Dist. LEXIS 27986, 2013 WL 673484, at *6.

*Id*. at 21. Plaintiff has done exactly what was found to be deficient in *Fernandez* and *Martinez*. This is a kitchen-sink complaint without facts that make plausible the claims themselves, or the causal connection to the alleged unconstitutional use of force. Plaintiff also fails to address the ruling in *Fernandez v. Chrisman*, which addressed incredibly similar *Monell* claims and found them to be insufficient. *See* 2:11-cv-02001-FJM, Doc. 71. Instead of stating proper claims, Plaintiff makes conclusory allegations.

For example, Plaintiff alleges the Defendant has policies and practices "of delaying and slowing down the release of information relating to incidents involving police officer uses of force," ¶ 100, and "purging officer discipline records," ¶ 104. Plaintiff fails to provide any facts to support these conclusory assertions. *See Moore v. City of Orange*, 2017 WL 10518114, *3 (C.D. Cal. 2017) (concluding that a similar list of policies lacked allegations of underlying facts and failed to meet *Iqbal* pleading standards). *See Hall v. City of Walnut Creek*, 2020 U.S. Dist. LEXIS 12152 (N.D. Cal. 2020) (allegation that officers were untrained/improperly trained in de-escalation tactics was insufficient to establish that

the lack of training was so obvious that a policy maker could be reasonably said to be deliberately indifferent).

There are no facts indicating that these alleged policies/training deficiencies—even if they existed—caused the injuries. Plaintiff, for example, does not identify any prior discipline for any of the involved officers, knowledge by any of the involved officers of any other discipline or involving non-party officers and similar uses of force, or knowledge by any of the involved officers of any "purging" of non-specific discipline records.[5] The *Monell* claims fail as Plaintiff attempted the kitchen-sink approach and should be dismissed.

### 1. *"Escalation" Theories are a Back-Door Attempt to Avoid Mendez' Barred Provocation Theory*.

Plaintiff's "escalation" *Monell* theory of liability stems from a provocation theory—such as the vague notion that the officers were trained to escalate force. The Supreme Court has overruled the Ninth Circuit's provocation rule—which focused on whether an officer "created a situation which led to" the use of force—as an incorrect statement of the law. *See County of Los Angeles v. Mendez*, 137 S.Ct. 1539, 1546-47 (2017). The only relevant inquiry is whether the individual Defendants acted unconstitutionally at the moment that force was used.

Recently, in *Knox v. City of Fresno*, 708 Fed.Appx. 321 (9th Cir. 2017) (unpublished), the Ninth Circuit addressed the overruling of the provocation theory in the context of a rejecting a request by a plaintiff—for a jury instruction that required the jury to "consider all of the circumstances that [the officers] knew or should have known on the scene"—ruling:

> '[A]n officer's use of force must be objectively reasonable based upon his contemporaneous knowledge of the facts. . .' Consequently, "[a plaintiff] cannot 'establish a Fourth Amendment violation based merely upon bad tactics that result in a deadly confrontation that could have been avoided.' *City & County of San Francisco v. Sheehan*, 135 S.Ct. 1765 (2015).

---

[5] Plaintiff generically refers to "discipline," yet this could encompass events completely unrelated to the subject matter of this lawsuit—such as vehicle accidents, missing/or appearing late at Court hearings, and/or dress code/facial hair/tattoo violations.

*Id.* at 323. And, again in *Woodward v. City of Tucson*, 870 F.3d 1154 (9th Cir. 2017), the Court again rejected a provocation theory, where plaintiff claimed that officers' entry into a residence with guns drawn provoked the confrontation. Here, the only relevant and constitutionally permissible inquiry is what the individual officers knew and did at the time that the force was used. Thus, all *Monell* allegations that are pre-tactical provocation theories that must be dismissed and are irrelevant. *See Burns v. City of Concord,* 2017 U.S. Dist. LEXIS 195389 (N.D.Cal. 2017) (bystander officers could not be integral participants in claim that they escalated and provoked the situation leading up to the shooting by "poor planning and poor execution" of a search warrant as such allegations were not relevant to the excessive force inquiry under *Mendez).*

### D. Plaintiff's Second Amended Complaint Does Not Comply with Rule 8.

Plaintiff's Second Amended Complaint against the City also includes irrelevant, conclusory, and inflammatory material. "The pleading process is not to be compromised by the inclusion of immaterial facts or accusations." *Donahoe v. Arpaio*, No. CV 10-2756-PHX-NVW, 2011 U.S. Dist. LEXIS 126512 at **3-4 (D. Ariz. Oct. 28, 2011). In *Donahoe*, the Court granted defendant's motion to dismiss as the complaint was overly long, immaterial, argumentative, conclusory, contained inflammatory material, and failed to put the defendants on notice as it did not identify factual allegations to support a cause of action. *Id*. at 16.

Similar to *Donahoe*, the Second Complaint includes new inflammatory allegations that were not deemed necessary by Plaintiff in the two prior versions of the complaint. For instance, the complaint states:

> On June 9, 2020 – in response to calls for police reform sparked by the asphyxiation death of George Floyd at the hands of Minneapolis police officers – Phoenix Police Chief Jeri Williams announced that the Phoenix Police Department would stop using the carotid control technique and would stop training officers on the technique.

¶ 99. The reference to Mr. Floyd's death—which led to mass protest and outrage throughout the country—has nothing to do with this case and is a misguided tactic perhaps intended to

11

garner media attention and public sympathy. Similarly, the carotid hold, otherwise known as a sleeper hold, was not used in this case (as it is applied to an individual who is standing up). Therefore, allegations related to changes in policy—occurring more than a year after the incident forming the basis of this litigation—is immaterial. Indeed, numerous courts have held that administrative policies of police departments are not equivalent to the constitutional standard of care. *See also* Fed. R. Civ. P. 407.

### III. CONCLUSION

For the reasons stated above, Plaintiff's claims against Defendant City of Phoenix should be dismissed.

DATED this 22nd day of July 2020.

> WIENEKE LAW GROUP, PLC
>
> By: */s/ Christina Retts*
> Kathleen L. Wieneke
> Christina Retts
> 1095 West Rio Salado Parkway, Suite 209
> Tempe, AZ 85281
> *Attorneys for Defendants City of Phoenix, Arnold, Rodarme, Palmer, Seaquist, Haynes, Yamane, Long and Funston*

# **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>Thomas A. Burnett
>Donal E. Burnett
>Burnett Law Office, PLC
>1744 South Val VistaDrive9 Suite 208
>Mesa, AZ 85204
>
>Joel B. Robbins
>Jesse M. Showalter,
>ROBBINS & CURTIN, p.l.l.c.
>301 East Bethany Home Road, Suite B-100
>Phoenix, Arizona 85012

*Attorneys for Plaintiff*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is a registered participant of the CM/ECF System:

>N/A

By: */s/ Mica Mahler*