1  Thomas A. Burnett, Esq. (026509)
   Donal E. Burnett, Esq. (028800)
2  **BURNETT LAW OFFICE, PLC**
3  1744 South Val Vista Drive, Suite 208
   Mesa, Arizona 85204
4  Tel: (480) 347-9116
5  tom.burnett@burnettlawaz.com
   don.burnett@burnettlawaz.com
6
7  Joel B. Robbins, Esq. (011065)
   Jesse M. Showalter, Esq. (026628)
8  **ROBBINS & CURTIN, p.l.l.c.**
   301 East Bethany Home Road, Suite B-100
9  Phoenix, Arizona 85012
10 Tel: (602) 285-0100
   joel@robbinsandcurtin.com
11 jesse@robbinsandcurtin.com
12 *Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Lei Ann Stickney, individually and on behalf of all statutory beneficiaries of Casey Wells, and in her capacity as the personal representative of the Estate of Casey Wells;<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, *et al*.,<br><br>Defendant. | No. 2:20-cv-01401-SMB-CDB<br><br>**RESPONSE TO DEFENDANT CITY OF PHOENIX'S MOTION TO DISMISS**<br><br>**(ORAL ARGUMENT REQUESTED)** |

The Court should deny Defendant City of Phoenix's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"). Plaintiff's wrongful death and *Monell* claims against the City comply with Rule 8's "facial plausibility" pleading standard, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the wrongful death *respondeat superior* and negligent hiring and supervision claims are valid because no court has determined that the Officer Defendants

committed a felony, and, because proving the commission of a felony is not essential to Plaintiff's claims. *See* A.R.S. § 12-820.05(B).

## I. <u>Factual Background</u>

This case arises from the death of Plaintiff's son, 40-year-old Casey Wells, at the hands of eight City of Phoenix police officers—Defendants James Arnold, Robert Rodarme, Kenneth Palmer, Joseph Seaquist, Dustin Haynes, Sean Yamane, Frank Long, and Travis Funston (collectively, the "Officer Defendants"). The Officer Defendants restrained Casey face-down on the ground, in handcuffs and hobbles, placed their knees on his back, and tased him repeatedly until he died.



(A still image from body camera footage shows several Officer Defendants kneeling on Casey while he was immobilized).

At 2:19 p.m. on February 4, 2019, Officer Arnold responded to a call reporting that a naked man was on a residential street in Phoenix. *See* SAC, ¶ 38. As Officer Arnold approached, Casey was standing still in the street with his arms raised. Casey was clearly under the influence of either drugs or a mental illness, and he was shouting at the sky and "talking to God." *Id.*, ¶¶ 33, 39. Officer Rodarme arrived on the scene at 2:22 p.m. and called for additional units. *Id.*, ¶¶ 40-41.

Officers Rodarme and Arnold knew that Casey did not pose a threat to anyone, that he had no access to weapons of any kind, and that he appeared to be suffering from psychosis or drug-induced delusion. *Id.*, ¶¶ 43-45. But instead of making a reasonable effort to keep the situation calm, they initiated a physical confrontation with Casey. *Id.*, ¶¶ 42, 46. When the officers grabbed Casey and attempted to handcuff him, he responded by spinning in circles, grunting, and flailing his limbs. *Id.*, ¶¶ 47-48. Officers Rodarme and Arnold escalated the situation and used more and more force to arrest Casey. *Id.*, ¶ 49. They grabbed him and took him to the ground, causing him to strike his head on the pavement. *Id.*, ¶ 50.

As Officers Rodarme and Arnold had Casey pinned to the ground, Officer Seaquist arrived on the scene and assisted in the restraint. *Id.*, ¶¶ 52-54. The three officers rolled Casey onto his stomach, causing Casey's left arm to become pinned beneath his body, and Officer Seaquist grabbed Casey's legs and bent them toward his buttocks. *Id.*, ¶¶ 54-55. Officers Funston and Long then arrived on the scene and joined in the force being applied to Casey by grabbing and restraining his arms and legs. *Id.*, ¶¶ 56, 58. As Casey lay face down and subdued, with five officers applying pressure to his back and limbs, Officer Seaquist deployed his Taser into Casey's back four times. *Id.*, ¶ 59. After the fourth Taser deployment, the officers handcuffed Casey behind his back. *Id.*, ¶ 62.

Officers Haynes, Yamane, and Palmer arrived on the scene as Casey lay immobilized, in handcuffs, with the other officers still applying pressure to his back and limbs. *Id.*, ¶ 63. Officers Haynes and Yamane assisted with placing Casey's legs into a RIPP restraint (a device used to immobilize the legs), while Officer Palmer stood by and watched without providing assistance to Casey or attempting to de-escalate the other officers' use of force. *Id.*, ¶¶ 65-67. As Casey lay completely still, in handcuffs, with at least six of the officers applying pressure to his back and restraining his limbs, Officer Seaquist deployed his Taser into Casey for a fifth time. *Id.*, ¶¶ 68, 72-73, 75.

Just twelve minutes after his initial encounter with Officer Arnold, Casey was unresponsive, not breathing, and had no pulse. *Id.*, ¶ 82. He was transported to a hospital where diagnostic imaging revealed "severe, global cerebral dysfunction" and "findings

1 compatible with severe hypoxic ischemic brain injury." *Id.*, ¶ 86. Casey received palliative
2 care and died two days later, on February 6, 2019. *Id.*, ¶¶ 88-89. The Maricopa County
3 Medical Examiner determined that Casey's death was caused by cardiac dysrhythmia and
4 arrest due to methamphetamine intoxication, acute psychosis, arteriosclerotic cardiovascular
5 disease, and physical restraint with prone positioning and possible extrinsic chest
6 compression. *Id.*, ¶ 90. The autopsy revealed multiple fractures of the bones and cartilage in
7 Casey's neck. *Id.*, ¶ 91.

8 Plaintiff's SAC asserts a wrongful death claim against the City of Phoenix, alleging
9 that it is vicariously liable for the assault and battery committed by its officers and that it is
10 independently liable for negligently training and supervising its officers with respect to
11 interactions with mentally disturbed individuals, the use of force, de-escalation tactics, and
12 the use of Tasers and prone positioning. *Id.*, ¶¶ 112-131. The SAC also asserts claims under
13 42 U.S.C. § 1983 against each Officer Defendant for violation of Casey's Fourth
14 Amendment rights and Plaintiff's Fourteenth Amendment right to familial association, as
15 well as a *Monell* claim against the City of Phoenix. *Id.*, ¶¶ 132-153. With respect to her
16 *Monell* claim, Plaintiff alleges that the City of Phoenix maintained policies, customs, and
17 procedures which were deliberately indifferent to the right of citizens to be free from
18 excessive and unreasonable force, including (a) training officers to escalate situations by
19 responding with more force than reasonably necessary, (b) training officers to use
20 submission techniques that greatly increase the likelihood that excessive force will occur,
21 (c) failing to train officers on interactions with mentally disturbed individuals and the risks
22 of positional asphyxia and repeated Taser use, and (d) purging officer discipline files and
23 delaying the release of information about use of force incidents, thereby creating a culture
24 of impunity where officers are encouraged to use excessive force. *Id.*, ¶¶ 92-111, 143-153.

25 **II.** **<u>Legal Analysis</u>**
26     **A.** **Standard for Decision**
27 Under Rule 8, a pleading must contain a "short and plain statement of the claim
28 showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8 pleading

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax: (602) 265-0267

standard does not require "detailed factual allegations," and a motion to dismiss should be denied if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Evaluating a complaint for facial plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to determine whether the well-pleaded facts allow it to infer "more than the mere possibility of misconduct." *Id.* at 679.

### B. Plaintiff's *respondeat superior* assault and battery wrongful death claim is valid – unless the Court makes a specific determination that each officer involved in Casey's death committed a felony.

Defendant's reliance on *Ryan v. Napier*, 245 Ariz. 54, 60, ¶ 21, 425 P.3d 230, 236 (2018), is misplaced because Plaintiff is not asserting a claim for "negligent use of intentionally inflicted force." Plaintiff's *respondeat superior* wrongful death claim alleges that the City of Phoenix is vicariously liable for the assault and battery that its employees committed against Casey Wells:

> 113. At all relevant times, the Officer Defendants were acting in the course and scope of their employment for Defendant City of Phoenix.
>
> 114. The City of Phoenix is vicariously liable for the acts of the Officer Defendants.
>
> 115. The Officer Defendants assaulted and battered Casey Wells.

SAC, ¶¶ 113-115. The Arizona Supreme Court reasoned in *Ryan* that "permitting negligence liability to rest on an officer's internal evaluation of the need for intentionally inflicted force could permit plaintiffs to 'plead around' statutory provisions that apply only to intentional

Page 5 of 15

tort claims," such as A.R.S. § 12-820.05(B). *See Ryan*, 425 P.3d 237. However, the court did not reference the plain language of the statute, which expressly limits its applicability to situations where a public employee has been found by a court to have committed a felony. *See id.*; A.R.S. § 12-820.05(B).

Under A.R.S. § 12-820.05(B), a public entity is immune from liability for losses caused by the action of an employee which is "*determined by a court to be a criminal felony*," unless the public entity knew of its employee's propensity for that action. A.R.S. § 12-820.05(B). To Plaintiff's knowledge, none of the Officer Defendants were ever charged, much less convicted, of a crime in connection with Casey's death. Under A.R.S. § 12-820.05, Plaintiff's *respondeat superior* assault and battery wrongful death claim is valid unless a court determines that each officer involved in the incident engaged in conduct that constitutes a felony.

In *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1234 (D. Ariz. 2003), the district court addressed the question of whether a criminal conviction was a prerequisite for a finding of immunity under A.R.S. § 12-820.05. The court relied on an Arizona case, *State v. Heinze,* 196 Ariz. 126, 993 P.2d 1090 (App. 1999), which interpreted similar language in an indemnity statute, A.R.S. § 41–621(L)(1). The court concluded that a criminal conviction was not required for the immunity provision because "any court may make the requisite determination." *Id.*; *see also Fernandez v. City of Phoenix*, CV 11-02001-PHX-FJM, 2012 WL 2343621, at *4 (D. Ariz. June 20, 2012) ("[A]ny court could determine whether an act constitutes a felony.").

As the City pointed out in its Motion, some of the Officer Defendants "are identified as arriving mid-struggle and having limited contact with the decedent." *See* Motion to Dismiss, Doc. 3, p. 8. Where a single officer shoots and kills an unarmed suspect, it may be clear that the officer committed a felony, but this case offers no such clarity. Some of the officers took Casey to the ground, causing him to hit his head. Other officers restrained his limbs and applied pressure to his back. One officer Tased Casey five times while he was subdued, and others stood guard and performed "crowd control" without ever intervening

for Casey's safety. At some point in the encounter, the bones and cartilage in Casey's neck were crushed. All of the Officer Defendants played an integral but different role in Casey's arrest, and whether any or all of them committed a felony is a question for the Court that the Court cannot make on this record. Plaintiff's claim should be allowed to move forward as to the City's vicarious liability for any Officer Defendant that the Court finds did not engage in felonious conduct.

**C. As with Plaintiff's *respondeat superior* claim, the City of Phoenix is not entitled to immunity from Plaintiff's claim for negligent training and supervision unless the Court determines that each Officer Defendant engaged in felony conduct.**

In *Gallagher v. Tucson Unified Sch. Dist.*, 237 Ariz. 254, 257, ¶¶ 11-12, 349 P.3d 228, 231 (App. 2015), the Arizona Court of Appeals extended A.R.S. § 12-820.05(B) to the plaintiffs' direct negligence claim against a city for negligent hiring, retention, and supervision of a school staff member who sexually abused a special needs student. The court reasoned that there was no distinction between the losses the plaintiffs sought to recover through their vicarious and direct liability claims because, under either theory, the damages "[arose] out of and [were] directly attributable to" the staff member's actions. *Id.* (quoting A.R.S. § 12–820.05(B)). However, because the staff member had already pled guilty and been convicted of a felony sex offense, there was no question that his conduct had been "determined by a court to be a criminal felony" as required to immunize the city from liability under A.R.S. § 12–820.05(B). In this case, if the Court determines that any Officer Defendant's conduct did not rise to a level that was felonious, Plaintiff's negligent hiring and supervision claim should not be dismissed.

The City also inappropriately characterizes Plaintiff's negligent training and supervision wrongful death claim as an attempt to plead around the prohibition on "negligent use of intentionally inflicted force" claims decided in *Ryan v. Napier*, 245 Ariz. 54, 60, ¶ 21, 425 P.3d 230, 236 (2018).[1] Plaintiff's claim alleges that the City failed to adequately train

---

[1] Defendant mistakenly alleges that "ratification" relates only to § 1983 claims. In Arizona, an employer may be held liable for the intentional torts of its employee if the employer

Page 7 of 15

its officers on the dangers of positional asphyxia, the repeated use of Tasers, and the use of Tasers against mentally disturbed individuals, as well as de-escalation tactics and interaction with non-violent mentally disturbed individuals. The City's inadequate training—or failure to train—officers on the risks of certain submission tactics or how to appropriately de-escalate a situation involving a non-violent mentally ill person is not equivalent to an officer's internal thought process when deciding whether to use physical force against a suspect.

The City's argument that causation is lacking for Plaintiff's "transparency" claims is also unfounded. The City is apparently referring to Plaintiff's allegations that the City of Phoenix Police Department purged officer disciplinary records and delayed the release of information about use of force incidents to the public. *See* SAC, ¶¶ 100-107. The SAC alleges that these practices, in addition to the City's practice of training officers to escalate situations by using more force than reasonably necessary, created a widespread and pervasive culture where police officers were emboldened to use excessive force and were shielded from scrutiny following use of force incidents. *See id.* To the extent that the "transparency" claims relate to Plaintiff's negligent training and supervision claim, the SAC alleges more than sufficient information to draw the reasonable inference that these practices created a culture of impunity which contributed to Casey's death.

**D. Plaintiff properly pled her *Monell* claim against the City by alleging longstanding customs and practices that were the moving force behind the deprivation of Plaintiff's and the decedent's constitutional rights.**

To state a *Monell* claim against a municipality, a plaintiff must demonstrate that the municipality's official policy, custom, or practice was "the actionable cause of the claimed injury." *Estate of Osuna v. County of Stanislaus*, 392 F. Supp. 3d 1162, 1172 (E.D. Cal.

---

subsequently ratified the conduct by expressing approval of it. *See Smith v. Am. Exp. Travel Related Services Co., Inc.*, 179 Ariz. 131, 137, 876 P.2d 1166, 1172 (App. 1994). Ratification is generally a factual question but may be found where an employer fails to reprimand or discipline the employee. *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 262 (Ind. Ct. App. 2013) (citing 30 C.J.S. *Employer–Employee Relationship* § 199 (2007)).

Page 8 of 15

2019) (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)). This may be accomplished by showing the municipality acted pursuant to an expressly adopted policy or a longstanding practice or custom, such as when the public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. *See id.* Liability under *Monell* must generally be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984)).

In *Estate of Osuna*, the estate of an individual killed in a police shooting brought a *Monell* claim against the county, alleging a pattern and practice of police misconduct as evidenced by several excessive force lawsuits against the county and sheriff's department employees which had resolved by settlement or jury verdict in a plaintiff's favor. *See* 392 F. Supp. 3d at 1173. The county filed a motion to dismiss, arguing that the plaintiff had not pled sufficient factual allegations to show an unconstitutional policy or custom. The district court denied the motion to dismiss, noting that, a complaint need only "contain sufficient factual allegations to plausibly suggest a policy or custom, as opposed to merely random, unconnected acts of misconduct" and must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* at 1174 (quoting *Twombly*, 550 U.S. at 555). The court also explained that heightened factual details of the entity's policy or custom should be identified and developed through discovery due to the plaintiff's disadvantage in gaining access to information at the pleading stage:

> The court concludes that the details of the alleged policy or custom, however, is a topic properly left to development through discovery. It is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork.

*Id.* at 1174-75 (citing *Creer v. Vallejo*, No. 2:14-cv-01428-JAM-DAD, 2015 WL 3795027, at *5 (E.D. Cal. June 17, 2015)). "Thus, although factual allegations of the complaint must plausibly allege the existence of a policy or custom that was the moving force behind the

constitutional violation at issue, the policy or custom itself need only be alleged in general terms." *Id.* at 1175.

The SAC alleges more than sufficient facts to "plausibly suggest" that the City maintained policies or customs that caused the deprivation of Plaintiff's and Casey's constitutional rights, and the Court should reject Defendant's baseless argument that the SAC is a "kitchen-sink complaint" containing allegedly boilerplate or conclusory allegations. *See* Motion to Dismiss, Doc. 3, p. 9. Plaintiff has asserted that the City maintained unconstitutional training policies, including (a) a policy of training officers to "escalate" situations by responding with more force than reasonably necessary to control a suspect, (b) allowing officers to use dangerous submission techniques, such as prone positioning and repeated Taser use, without training officers on the risks associated with those techniques, and (c) failing to train officers in appropriate interactions with mentally ill or disturbed individuals. SAC, ¶¶ 94-98, 108-111. The City knew that these training deficiencies would result in increased incidents of excessive force and a significant risk of positional asphyxia or death to suspects. *Id.*, ¶¶ 95, 97. Moreover, the City maintained policies of purging officers' disciplinary records and delaying the release of information about use of force incidents to the public, which were intended to deter the public from holding officers and the City accountable for police misconduct and thereby created a widespread "culture of impunity" where officers were emboldened to use unreasonable force. *Id.*, ¶¶ 100-107. These policies culminated in the restraint-induced death of Casey Wells and were therefore the moving force behind the deprivation of Casey's and Plaintiff's constitutional rights. *Id.*, ¶¶ 151-152.

### a. Plaintiff's *Monell* claim properly alleges that the City of Phoenix was deliberately indifferent to the obvious and predictable consequences of its deficient training policies.

Plaintiff's *Monell* claim is also properly pled insofar as it pertains to the City's deficient training policies. To establish liability for a § 1983 failure-to-train claim, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into

contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). A plaintiff must allege facts showing that the municipality disregarded a known or obvious consequence that a particular omission in its training program would cause municipal employees to violate citizens' constitutional rights. *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014). Where the unconstitutional consequences of failing to train are patently obvious, the plaintiff need not show a pattern of prior similar violations in order to establish deliberate indifference. *Connick*, 563 U.S. at 64. For instance, the Supreme Court has explained that "[g]iven the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights . . . ,' a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." *Id.* (quoting *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

In *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 753 (S.D. Tex. 2011), a district court determined that the plaintiffs had sufficiently alleged a § 1983 failure to train claim similar to the one alleged in this case. In *Hobart*, the plaintiffs alleged that the city failed to properly train police officers on the use of force and encounters with mentally ill individuals, the proper management and detention of mentally ill individuals, and the proper use of crisis intervention techniques, and that those practices resulted in the death of their son, who suffered from schizoaffective disorder, during a police encounter. *Id.* at 752-53. It was sufficient that the plaintiffs had pled that the city was aware of the inadequacies of its training and that the excessive use of force against a mentally ill person was an obvious consequence of those inadequacies. *Id.* at 753. In concluding that the plaintiffs had properly stated a claim under Rule 12(b)(6), the court acknowledged the difference in the level of factual detail required at the pleading stage and at summary judgment:

> At the summary judgment stage . . . , Plaintiffs will face a high burden to prove the existence of a policy, either as a custom or practice or under the single incident exception. However, in considering a motion to dismiss under Rule 12(b)(6), the Court must only determine whether Plaintiffs have plausibly alleged facts that, if proven true, would provide a basis for recovery.

*Id.* at 755.

Here, it is highly predictable that officers who are trained to respond with a level of force that is disproportionately higher than the resistance they are confronted with will engage in excessive force. It is also foreseeable that officers will encounter mentally ill or disturbed individuals during the course of their duties and that, without proper training, an officer's use of prolonged prone restraint or repeated Taser use will result in a suspect's serious injury or hypoxic death. The SAC alleges that the City of Phoenix knew that by training officers to escalate situations, allowing them to use submission tactics known to pose a significant risk of asphyxiation or death, and failing to train them in appropriate interactions with mentally disturbed individuals, excessive force incidents would foreseeably occur and, in fact, did occur with respect to Casey Wells. SAC, ¶¶ 95-97, 109-110, 145-148. These allegations, taken as true, demonstrate a "plausible" claim for relief. *See Jones v. City of Cincinnati*, 521 F.3d 555, 560–61 (6th Cir. 2008) (affirming the district court's denial of the city's motion to dismiss a § 1983 failure to train claim where the complaint alleged that the city's inadequate training with respect to the use of force, prone positioning, and the associated risk of positional asphyxia would, if proven, violate the Constitution).

### b. Plaintiff's *Monell* claim does not involve a "provocation theory."

Defendant's argument that Plaintiff's "escalation" training claim is a "back-door attempt to avoid *Mendez*' barred provocation theory" is without merit. *See* Motion to Dismiss, Doc. 3, p. 10. Under the now overruled provocation rule, a law enforcement officer could be held responsible for an *otherwise reasonable* use of force where the officer intentionally or recklessly provoked a violent confrontation through an independent Fourth Amendment violation, such as a warrantless entry. *See County of Los Angeles, Calif. v.*

*Mendez*, 137 S. Ct. 1539, 198 L. Ed. 2d 52 (2017). That is not the situation described in the SAC. Plaintiff's escalation theory asserts that the City of Phoenix trained officers to respond to a suspect's noncompliance with more force than reasonably necessary under the circumstances. SAC, ¶¶ 94-96. In other words, officers were trained to escalate their use of force above and beyond the level of resistance exhibited by a suspect. This does not involve a claim that the Officer Defendants provoked or initiated a violent confrontation but focuses instead on the fact that officers were trained to respond to a suspect's behavior with a disproportionate amount of force.

### E. The SAC complies with Rule 8 and is not inflammatory or immaterial.

The SAC is not overly long and does not contain any irrelevant, inflammatory, or immaterial information that would violate Rule 8, and it bears no resemblance to the complaints described in *Donahoe v. Arpaio*, as alleged in Defendant's Motion. In *Donahoe*, several plaintiffs filed complaints which "quote[d] extensively from newspaper articles or list[ed] detailed biographical information about the parties that [was] too far removed" from their claims. *Donahoe v. Arpaio*, CV10-2756-PHX-NVW, 2011 WL 5119008, at *3 (D. Ariz. Oct. 28, 2011). The complaints listed a "multitude of wrongdoings" but failed to tie the alleged facts to the causes of action. *Id.* The district court cautioned that pleadings should not be used to disparage other parties or include lengthy, irrelevant material for an improper purpose. *Id.*

Defendant appears to take issue with only a single paragraph in the SAC, which states that the City of Phoenix Police Department announced it would discontinue its use of the carotid control technique in June 2020, following the death of George Floyd and nationwide calls for police accountability and reform. *See* SAC, ¶ 99. This paragraph does not contain any lengthy, irrelevant, or disparaging material. Even though the Department's decision was widely covered by local news agencies, Plaintiff did not quote from any news articles as the plaintiffs did in *Donahoe*. The paragraph succinctly provides context for the timing and reason for the Department's decision, which is relevant because it tends to show that the Department likely knew, at the time of Casey's death, that certain submission techniques are

1 more likely to result in injury or death to suspects and are therefore more likely to result in
2 excessive force. While it is unknown at this time whether any officer attempted the carotid
3 control technique on Casey Wells before he was taken to the ground and placed in a prone
4 restraint, his autopsy revealed multiple fractures of the bones and cartilage in his neck.
5 Nevertheless, if the Court determines that the SAC falls short of the requirements of Rule 8
6 or 12(b)(6) for this or any other reason, Plaintiff requests leave to file a third amended
7 complaint.

## III. Conclusion

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant City of Phoenix's Motion to Dismiss.

RESPECTFULLY SUBMITTED: August 10, 2020

**ROBBINS & CURTIN, p.l.l.c.**

By: /s/ Joel B. Robbins
Joel B. Robbins
Jesse M. Showalter
301 E. Bethany Home Road
Suite B-100
Phoenix, Arizona 85012
*Attorneys for Plaintiff*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax: (602) 265-0267

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2020, I electronically transmitted the attached document to the Clerk's Office using the TurboCourt System for filing and transmittal of a Notice of Electronic Filing to the following TurboCourt registrants:

Kathleen L. Wieneke
Christina Retts
Wieneke Law Group, PLC
1095 W. Rio Salado Parkway, Suite 209
Tempe, Arizona 85281
kwieneke@wienekelawgroup.com
cretts@wienekelawgroup.com
*Attorneys for Defendant*

Thomas A. Burnett
Donal E. Burnett
Burnett Law Office, PLC
1744 S. Val Vista Drive, Suite 208
Mesa, Arizona 85204
tom.burnett@burnettlawaz.com
don.burnett@burnettlawaz.com
*Co-counsel for Plaintiff*

/s/ Julie W. Molera