MW

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lei Ann Stickney, | No. CV-20-01401-PHX-SMB (CDB) |
| Plaintiff, | |
| v. | **ORDER** |
| City of Phoenix, et al., | |
| Defendants. | |

On February 4, 2020, Plaintiff Lei Ann Stickney filed, through counsel, a civil Complaint in the Maricopa County Superior Court, *Stickney vs. City of Phoenix*, No. CV2020-091655. Plaintiff subsequently filed a Second Amended Complaint (Doc. 1-3), and on July 15, 2020, Defendants removed the case to this Court (Doc. 1).

Defendant City of Phoenix has filed a Motion to Dismiss (Doc. 3). The Motion is fully briefed, and as follows, will be granted in part, and denied in part.[1]

**I.   Background**

Plaintiff brings this action on her own behalf, on the behalf of all statutory beneficiaries of her deceased son—Casey Wells, and in her capacity as the personal representative of his estate. She sues the City of Phoenix and Phoenix Police Department Officers James Arnold, Robert Rodarme, Joseph Seaquist, Travis Funston, Frank Long, Dustin Haynes, Sean Yamane, and Kenneth Palmer ("Officer Defendants"). Plaintiff alleges the following.

---

[1] The Court finds this matter suitable for decision as submitted on the briefs without oral argument. *See* LRCiv 7.2(f).

1    On February 4, 2019, the Phoenix Police Department received a call reporting a
2  naked man who was praying or performing yoga on a residential street in Phoenix, Arizona.
3  (Doc. 1-3 ¶¶ 29, 31.)  At 2:19 p.m. that day, Officer Arnold responded to the call.  (*Id.*
4  ¶ 38.)  When he arrived on the scene, Casey Wells was standing still in the street, naked
5  and unarmed, with his arms raised and was yelling at the sky, "talking to God."  (*Id.* ¶¶ 31-
6  32, 39.)  It was apparent that Wells was "mentally disturbed[,] whether because of mental
7  illness or intoxication."  (*Id.* ¶ 33.)  Several minutes later, at 2:22 p.m., Officer Rodarme
8  responded to the scene.  (*Id.* ¶ 40.)  Officers Arnold and Rodarme approached Wells and
9  attempted to arrest and handcuff him by pulling his arms behind his back.  (*Id.* ¶¶ 42-47.)
10 Wells "responded by spinning in circles, grunting, and flailing his arms and legs."  (*Id.*
11 ¶ 48.)  Officers Arnold and Rodarme then grabbed and pulled Wells to the ground, causing
12 Wells to strike his head on the asphalt.  (*Id.* ¶ 50.)  While Wells lay on his back, Officer
13 Arnold pinned him to the ground by pressing his elbow into his chest.  (*Id.* ¶ 51.)

14    Officer Seaquist then arrived on the scene.  (*Id.* ¶ 52.)  Officers Arnold, Rodarme,
15 and Seaquist rolled Wells onto his stomach, causing his left arm to become pinned beneath
16 his body, and Officer Seaquist grabbed Wells' legs "and bent them toward his buttocks."
17 (*Id.* ¶¶ 54-55.)  Officers Funston and Long were the next to arrive on the scene.  (*Id.* ¶ 56.)
18 While Officers Arnold, Rodarme, and Seaquist held Wells face-down on the asphalt with
19 his left arm pinned beneath his body, Officer Funston restrained Wells' legs and Officer
20 Long restrained his arm.  (*Id.* ¶¶ 56-59.)  While Wells lay face-down with all five officers
21 on top of him and with his left arm pinned beneath his body, Officer Seaquist deployed his
22 taser into Wells' back, which "locked [Wells] up."  (*Id.* ¶¶ 59-60.)  Officer Seaquist then
23 immediately deployed his taser into Wells' back three more times.  (*Id.* ¶ 61.)  After the
24 fourth taser deployment, Wells' hands were handcuffed behind his back.  (*Id.* ¶ 62.)

25    Shortly thereafter, Officers Haynes, Yamane, and Palmer responded to the scene.
26 (*Id.* ¶ 63.)  When they arrived, Wells remained laying face-down in handcuffs, "subdued,"
27 with Officers Arnold, Rodarme, Seaquist, Funston, and Long applying pressure to his body.
28 (*Id.* ¶¶ 64, 72.)  Officers Haynes and Yamane placed Wells' legs in a "RIPP" restraint,

which they clipped to his handcuff chain. (*Id.* ¶¶ 64-66.) Officer Seaquist then deployed his taser into Wells a fifth time, while Officers Arnold, Rodarme, Funston, Long, Haynes, and Yamane applied pressure to Wells' neck, back, and legs. (*Id.* ¶¶ 68, 72-73, 75.) Officer Palmer, who was wearing a "city-issued Axon body camera," watched as the other officers restrained Wells. (*Id.* ¶¶ 67, 71-72.)

At approximately 2:31 p.m., Wells was reported as unresponsive, not breathing, and without a pulse. (*Id.* ¶¶ 80, 82.) Paramedics were called to the scene, and when they arrived, they administered epinephrine to revive Wells, and then transported him to John C. Lincoln Deer Valley Hospital. (*Id.* ¶¶ 84-85.) There, Wells was diagnosed with "cardiopulmonary arrest, pulseless electrical activity, encephalopathy acute, systemic inflammatory response syndrome, acidosis, lactic acid increase, hypernatremia, and coagulopathy." (*Id.* ¶ 85.) An electroencephalogram (EEG) indicated that Wells had "'severe, global cerebral dysfunction"' with generalized epileptiform activity and multiple generalized electrographic seizures," and a computerized tomography (CT) brain scan revealed "findings most compatible with severe hypoxic ischemic brain injury involving gray matter structures with effacement of basilar cisterns and slightly downward displacement and swelling of cerebellar tonsils." (*Id.* ¶ 86.)

Two days later, on February 6, 2019, Wells was pronounced dead. (*Id.*, ¶¶ 88-89.) The Maricopa County Medical Examiner determined that Wells' death was caused by "cardiac dysrhythmia and arrest due to methamphetamine intoxication, acute psychosis, arteriosclerotic cardiovascular disease, and physical restraint with prone positioning and possible extrinsic chest compression." (*Id.* ¶ 90.) The autopsy also revealed multiple perimortem fractures of Wells' thyroid cartilage in the right superior horn, the right superior lamina, and the right and left inferior horns, as well as reddish discoloration in two of the fractures and in the lamina of the cricoid cartilage. (*Id.* ¶ 91.)

Plaintiff's Second Amended Complaint asserts four grounds for relief. In Count One, Plaintiff brings a wrongful death claim against the City of Phoenix under Section 12-611 of the Arizona Revised Statutes, claiming it is vicariously liable for the tortious assault

and battery of Wells by the Officer Defendants; and it is directly liable for its negligent failure to train and supervise them. In Count Two, Plaintiff brings a 42 U.S.C. § 1983 claim against the Officer Defendants for excessive use of force in violation of the Fourth Amendment. In Count Three, Plaintiff brings a § 1983 claim against the Officer Defendants for loss of familial association in violation of the Fourteenth Amendment. And in Count Four, Plaintiff brings a § 1983 municipal liability claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against the City of Phoenix.

## II.     Legal Standard

A complaint, or any claim within it, may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails to state a cognizable claim for relief or fails to allege sufficient facts to support a cognizable claim. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). It must also contain sufficient factual matter, which states a claim that is plausible on its face, in that there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). Thus, although a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

In deciding a motion to dismiss, the Court must "accept as true all well-pleaded allegations of material fact and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009). However, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not

entitled to the assumption of truth, *Daniels-Hall*, 629 F.3d at 998, and "are insufficient to defeat a motion to dismiss for failure to state a claim," *In re Cutera Sec. Litig.,* 610 F.3d 1103, 1108 (9th Cir. 2010) (internal citation and quotation omitted).

### III. Discussion

Defendant City of Phoenix moves to dismiss the two claims against it arguing: (1) Plaintiff's wrongful death claim is precluded by *Ryan v. Napier*, 425 P.3d 230, 233 (Ariz. 2018), which holds a negligence claim involving the use of intentionally inflicted force is not cognizable; (2) Plaintiff's wrongful death claim is barred by Ariz. Rev. Stat. § 12-820.05(B), because the claimed losses arise from conduct that qualify as criminal felonies; and (3) Plaintiff's *Monell* claims should be dismissed because they are boilerplate, conclusory, and not supported by sufficient facts. The City of Phoenix further moves to strike an allegation in the second amended complaint regarding George Floyd and the carotid control technique as "irrelevant, conclusory, and inflammatory material."

#### A.   Count One – Wrongful Death Claim

Arizona's wrongful death statute provides that if the "death of a person is caused by a wrongful act, neglect or default," the party responsible for the act, neglect or default remains "liable to an action for damages, notwithstanding the death of the person injured." Ariz. Rev. Stat. § 12-611. Wrongful death damages are available for losses "'resulting from the death,' § 12-613, which may include the decedent's prospective earning capacity; the loss of companionship, comfort, and guidance caused by the death; and the survivor's emotional suffering, but not the decedent's own pain and suffering." *Walsh v. Advanced Cardiac Specialists Chartered*, 273 P.3d 645, 648 (Ariz. 2012). A public entity is not, however, "liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action." Ariz. Rev. Stat. § 12-820.05(B). Nor is "a public entity []or a public employee acting within the scope of his employment [] liable for punitive or exemplary damages." Ariz. Rev. Stat. § 12-820.04.

. . . .

Plaintiff's wrongful death claim alleges that the City of Phoenix is (1) vicariously liable for the Officer Defendants' wrongful acts of assault and battery which caused Wells' death, and (2) directly liable for the City's negligent training and supervision of those officers that resulted in the tortious assault and battery that caused Wells' death. (Doc. 1-3 ¶¶ 114-126; Doc. 7 at 5-7.)  Accepting the allegations in the second amended complaint as true, the allegations support that Plaintiff's wrongful death losses arise out of, and are directly attributable to, felony criminal acts by public employees.[2]  Plaintiff alleges that, without justification, and while Wells was handcuffed behind his back with his face, chest, and stomach on the ground, Officers Arnold, Rodarme, Funston, Long, Haynes, and Yamane intentionally applied physical force to Wells's neck, back, and legs (*id.* ¶¶ 68, 72-73, 75), and Officer Seaquist "repeatedly and intentionally tased [Wells]" (*id.* ¶ 78).  This use of force, Plaintiff alleges, caused Wells to suffer, among other things, asphyxiation, cardiac arrest, hypoxic brain damage, and multiple fractures to his thyroid cartilage, which culminated in his death. (*Id.* ¶¶ 74-91, 136.)

Under Arizona law, a person commits felony aggravated assault if the person "intentionally, knowingly or recklessly" (1) "causes serious physical injury to another"[3];

---

[2] While the Arizona Supreme Court has not expressly decided the issue, the parties agree that this Court has authority to determine if § 12-820.05 applies despite the absence of a criminal felony charge or conviction. *See also Ryan,* 425 P.3d at 237 (citing *State v. Heinze,* 993 P.2d 1090, 1094 (Ariz. Ct. App. 1999) "interpreting § 41-621(L), which has language similar to § 12-820.05(B), and concluding that a felony conviction is not a prerequisite to the application of the felony exclusion"); *Rand v. City of Glendale,* No. 1 CA-CV 07-0722, 2008 WL 5383363, at *6 (Ariz. Ct. App. Dec. 26, 2008) (finding "a felony conviction [was] not a prerequisite to application of the immunity provided by § 12-820.05" and that "the trial court did not err in determining that [] claims for battery and false arrest/imprisonment, as alleged in [the] complaint . . ., set forth conduct that would, if proven, constitute a felony under Arizona law"); *Fernandez v. City of Phoenix*, CV-11-02001-PHX-FJM, 2012 WL 2343621, at *3 (D. Ariz. Jun. 20, 2012); *Cameron v. Gila County*, No. CV-11-00080-PHX-JAT, 2011 WL 2115657, at *4 (D. Ariz. May 26, 2011); *Al-Asadi v. City of Phoenix*, No. CV-09-00047-PHX-DGC, 2010 WL 3419728, at *5 (D. Ariz. Aug. 27, 2010); *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1234 (D. Ariz. 2003).

[3] "'Serious physical injury' is statutorily defined to include any physical injury 'that creates a reasonable risk of death, or that causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb.'" *State v. Dodd*, 418 P.3d 955, 959 (Ariz. Ct. App. 2017) (quoting Ariz. Rev. Stat. § 13-105(39)).

(2) causes physical injury to another using "a deadly weapon or dangerous instrument"[4]; (3) "causes temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part"; or (4) causes physical injury to another "while the [person] is bound or otherwise physically restrained or while the [person]'s capacity to resist is substantially impaired." Ariz. Rev. Stat. §§ 13-1203(A), 13-1204(A)(1)-(4). As set forth above, at minimum, Officers Arnold, Rodarme, Seaquist, Funston, Long, Haynes, and Yamane are alleged to have used intentional and unjustified physical force that caused serious physical injury to Wells, and to have done so while Wells was physically restrained. The alleged facts underlying the claims of tortious assault and battery by these officers therefore satisfy the elements of aggravated assault, and their actions, if proven, constitute criminal felonies.

Plaintiff does not appear to dispute that if, as here, the Court determines that the alleged officer conduct was felonious, the City is immune from both vicarious and direct liability under § 12-820.05(B). (*See* Doc. 7 at 7); *see also Gallagher v. Tucson Unified School Dist.*, 349 P.3d 228, 231 (Ariz. Ct. App. 2015) (holding § 12-820.05(B) applied to both vicarious and direct negligent hiring and supervision claims). Instead, Plaintiff argues that because each of the officers played a different role in the events leading to Wells' death, her vicarious and direct claims should be allowed to move forward at this stage unless the Court can determine that the specific actions of each Officer Defendant qualify as a felony. Although, as set forth above, the allegations support such a determination, this argument is nonetheless without merit.

"By its clear and unambiguous language, § 12-820.05(B) insulates a public entity from liability for loss caused by an employee's felony criminal acts." *Gallagher*, 349 P.3d at 231. Here, all the individuals claimed to have inflicted the injuries resulting in Wells'

---

[4] "'Dangerous instrument' means anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." Ariz. Rev. Stat. § 13–105(12); *see also State v. Gustafson*, 311 P.3d 258, 263 (Ariz. Ct. App. 2013) (a taser may constitute a dangerous instrument under certain circumstances).

death are public employees, and the alleged tortious acts of assault and battery that caused those injuries qualify as felonies. Thus, the losses for which Plaintiff can recover—those resulting from Wells' death—arise from alleged acts of a public employee that are felonious, irrespective of whether it is later revealed that Wells' death is causally linked to only some, but not all, of the officers' actions. And insofar as Plaintiff alleges that the negligent conduct of the City or some officer contributed to the alleged injuries, the losses arising from that conduct are not distinct from the losses caused by the felony acts, to which § 12-820.05(B) applies.[5] *See Gallagher*, 349 P.3d at 231 (observing that § 12-820.05(B) does not limit immunity "based on the type of action or inaction by the entity that contributed to the injury" and finding no distinction between the losses plaintiffs sought to recover through their vicarious and direct liability claims, as they both arose out of the same felony acts). Further, if the proven facts show that the officers' actions were justified or did not cause the alleged injuries, and thereby were not felonious, there are no losses for which the City would be civilly liable. *See* Ariz. Rev. Stat. §§ 13-409, 13-410, 13-413; *Betancourt v. City of Phoenix,* No. 1 CA-CV 16-0361, 2017 WL 5586533, at *4 (Ariz. Ct. App. 2017); *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004).

Accordingly, because the claimed wrongful death losses arise from alleged conduct of City employees that constitute criminal felonies, and there are no allegations or arguments that the City was aware that any of those employees had a propensity for such conduct, the City is immune from liability under § 12-820.05(B). Accordingly, Plaintiff's wrongful death claim against the City of Phoenix in Count One will be dismissed.[6]

---

[5] The fact that one of the officers is alleged to have only watched while the others used physical force is also not relevant to whether the City is immune from liability because the claimed losses are alleged to arise from the officers' wrongful acts of assault and battery, not negligence. (Doc. 1-3 ¶¶ 115-116 ("The Officer Defendants assaulted and battered [] Wells" and "caused harmful or offensive contact to [him] by using excessive force which killed him").)

[6] Because Plaintiff's wrongful death claim is barred by § 12-820.05(B), the Court need not reach Defendant's alternative argument that it is not cognizable under *Ryan v. Napier*. *But see Liberti v. City of Scottsdale*, 816 Fed. App'x 89, 94 (9th Cir. 2020) (Bennet, J., dissenting) (finding intentional use of force supported a battery claim which was a wrongful act within the meaning of Arizona wrongful death claim).

### B.     Count Four – *Monell* Claim

Section 1983 creates a cause of action against any person who, under the color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. A municipality is a "person" that "can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue," in that the alleged deprivation occurred as a result of the municipality's policy. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In other words, a plaintiff may not maintain a respondeat superior or vicarious liability claim against a municipality under § 1983 for the unconstitutional acts of its employees. *Canton*, 489 U.S. at 385; *Monell*, 436 U.S. at 691.

To state a § 1983 municipal liability claim under *Monell*, a plaintiff must allege facts to support "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal brackets and quotation omitted). Municipal policy includes (1) an expressly adopted policy, such as an ordinance, regulation, or policy statement; (2) a longstanding custom or practice that is so persistent and widespread that it constitutes a permanent and well settled municipal policy; or (3) an act of, or ratified by, a municipal employee with final policymaking authority that may fairly be said to represent official policy. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Monell*, 436 U.S. at 694.

"A policy can be one of action or inaction." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). A policy of inaction based on the lack or inadequacy of training may be established "where the failure to train amounts to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,*

489 U.S. at 388; *see also Connick,* 563 U.S. at 61. "Satisfying this standard requires proof that the municipality 'had actual or constructive notice that a particular omission in their training program will cause municipal employees to violate citizens' constitutional rights.'" *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 794 (9th Cir 2016) (quoting *Connick*, 563 U.S. at 61) (alterations omitted). Such notice can be established by showing "[a] pattern of similar constitutional violations by untrained employees," *Connick*, 563 U.S. at 62, or by showing, in a narrow range of circumstances, that "the need for more or different training is so obvious" and the lack of training is "so likely to result in the violation of constitutional rights," *Canton*, 489 U.S. at 390. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404 (1997).

### 1. Policy Descriptions

Plaintiff alleges that the City of Phoenix had policies that amounted to deliberate indifference to Wells' Fourth Amendments right to be free from excessive and unreasonable force, including: (1) failing to train its officers regarding the use of prone restraint and the dangers of positional asphyxia (Doc. 1-3 ¶¶ 111, 145); (2) failing to train its officers "regarding the use of tasers, including the dangers of repeated uses of tasers, the dangers of using tasers on the mentally disturbed, and the fact that tasers should not be used on handcuffed and restrained individuals" (*id.* ¶¶ 110, 145); and (3) failing to train its officers regarding interactions with individuals who are "mentally disturbed, whether because of mental illness or intoxication" (*id.* ¶¶ 109, 146). Plaintiff claims that by allowing officers to use techniques and tools which pose a significant risk of injury or death, such as prone restraint and repeated taser use, without adequate training on their use and associated risks, the City "encourage[ed] police officers to 'escalate' situations" and "to use more force than is reasonably necessary or appropriate to respond to situations." (*Id.* ¶¶ 94, 148; *see also* Doc. 7 at 10.) She further claims the City created a "culture of impunity" that fostered the use of such force by purging officer discipline records and delaying or slowing the release of information to the public regarding police incidents involving excessive and unreasonable force. (Doc. 1-3 ¶¶ 100-107, 149.)

Plaintiff's descriptions of the policies at issue are sufficient at this stage to place Defendant on notice of the nature of the claims against it and allow it to prepare an adequate defense. *See Twombly*, 550 U.S. at 555; *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Indeed, "[i]t is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork." *Estate of Osuna v. County of Stanislaus*, 392 F. Supp. 3d 1162, 1174 (E.D. Cal. 2019); *see also Santos ex rel. Santos v. City of Culver City,* 228 Fed. App'x 655, 660 (9th Cir. 2007) (Reinhardt, J., dissenting in part) (finding denial of discovery prevented the plaintiff from showing that there was a policy of indifference with respect to the use of excessive force and that the existence of the policy caused the violation). Should the alleged policies fail to be developed and proven with further detail through discovery, they may be properly disposed of on summary judgment.

### 2. Failure to Train – Prone Restraint

Plaintiff's allegations are sufficient to state a plausible municipal policy claim based on the City's failure to train its officers regarding the proper use of prone restraint and the associated dangers of positional asphyxia. Plaintiff alleges that the City allows officers to use prone restraint as a submission technique, the improper application of such technique poses a significant risk of asphyxiation and death, and the City has not trained its officers regarding the proper use of, or risks posed by, prone restraint. (Doc. 1-3 ¶¶ 97, 111, 145.) These allegations, if accepted as true, support an inference of deliberate indifference by the City of Phoenix as to the need to train, despite the absence of an alleged pattern of similar conduct. Under the facts alleged, without specific training, the parameters that delineate the reasonable use of prone restraint are not apparent, and given the reasonable possibility that officers will use the technique during an arrest and the alleged risks posed by the improper use of that technique, the need for officer training is "obvious" and the infliction of excessive force is a "highly predictable consequence" of failing to do so. *See Connick*,

563 U.S. at 64; *Canton*, 489 U.S. at 390; *Brown*, 520 U.S. at 409.[7]

The second amended complaint also sets forth sufficient facts to plausibly allege that the City's failure to train was the moving force behind the deprivation of Wells' constitutional rights. Plaintiff alleges that seven officers, who each arrived on the scene at different times, restrained Wells in a prone position and applied restraint with a degree of force and length that caused positional asphyxia and other injuries which resulted in his death and violated his Fourth Amendment rights. (Doc. 1-3 ¶¶ 134, 136.) The number of actors and similarity of actions alleged support the inference that the infliction of positional asphyxia by the officers in this case would not have taken place had they been properly trained by the City on the reasonable limitations of using prone restraint, and that the alleged use of excessive force was not the mere result of an isolated instance of misjudgment by an officer. *See Henry v. County of Shasta*, 132 F.3d 512, 521 (9th Cir. 1997) (finding a policy more likely where multiple officials participated in the constitutional violation).

### 3. Failure to Train – Tasers

Similarly, Plaintiff's allegations are also sufficient, at this stage, to state a plausible policy claim based on the City's failure to train officers regarding the proper use of tasers. Plaintiff alleges that the City allows officers to use tasers during an arrest, the improper application of tasers poses a significant risk of injury and death, and the City has not trained its officers regarding the proper use of tasers, including the limitations on repeated taser deployment and using tasers on individuals who are handcuffed and restrained. (Doc. 1-3 ¶¶ 37, 110, 145, 148.) These allegations, if accepted as true, sufficiently allege an inference of deliberate indifference by the City of Phoenix as to the need to train, because as above, the reasonable use of tasers is not apparent without specific training, and given the

---

[7] Plaintiff's allegations that the City has acted to deter the public from holding officers and the City liable for past incidents of excessive force (*see* Doc. 1-3 ¶¶ 102, 106; Doc. 7 at 10), if proven, and shown to involve similar incidents of restraint, may also support the inference that the City was on notice of the deficiencies in training and the unconstitutional use of prone restraint was customary. *See e.g., Hunter v. County of Sacramento*, 652 F.3d 1225, 1234 (9th Cir. 2011); *Gomez v. Vernon,* 255 F.3d 1118, 1127 (9th Cir. 2001); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).

reasonable possibility that officers will use tasers during an arrest and the alleged risks posed by the improper use of tasers, the need for officer training is obvious, and inadequate training is likely to result in instances of excessive force.

Next, Plaintiff alleges that Officer Seaquist violated Wells' Fourth Amendment rights when he deployed a taser into Wells' back five times, while Wells was subdued, in handcuffs, and restrained in a prone position. (*Id.* ¶¶ 59-62, 68, 135.) This too is sufficient to plausibly allege, at this stage, that the City's failure to train was the moving force behind Wells' constitutional deprivation, because the allegations support the reasonable inference that his alleged injuries would have been avoided had the City adequately trained its officers how or when not to use multiple taser applications on an individual who is handcuffed and restrained in a prone position. *See Jones v. Las Vegas Metropolitan Police Department*, 873 F.3d 1123, 1132 (9th Cir. 2017) (stating that "continuous, repeated and simultaneous tasings" is force which "generally can't be used on a prone suspect who exhibits no resistance, carries no weapon, is surrounded by sufficient officers to restrain him and is not suspected of a violent crime," and finding a triable issue of fact where evidence suggested "that reasonably trained officers would have known that repeated and simultaneous taser use poses a risk of serious injury or death").

To the extent the second amended complaint offers alternative policy theories, *see supra,* the Court need not reach them at this stage, because the alleged policy of failing to train officers regarding the reasonable use of prone restraint and tasers are sufficient to withstand the motion to dismiss Plaintiff's *Monell* liability claim. Defendant's request to dismiss Count Four will therefore be denied.

### C. Allegation – Carotid Control

Under Rule 12(f) of the Federal Rules of Civil Procedure, a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d

970, 973 (9th Cir. 2010) (internal quotation marks omitted).

Plaintiff alleges that "[o]n June 9, 2020—in response to calls for police reform sparked by the asphyxiation death of George Floyd at the hands of Minneapolis police officers—City of Phoenix Police Chief Jeri Williams announced that the Phoenix Police Department would stop using the carotid control technique and would stop training officers on the technique." (Doc. 1-3 ¶ 99.) Contrary to Defendant's argument, this paragraph does not set forth an allegation that is facially "redundant, immaterial, impertinent, or scandalous." Rather, as Plaintiff argues in part, the reasons for the City's decision to discontinue police use of the carotid control technique is plausibly relevant to her claims that at the time of Wells' death, the City was on notice that certain restraint techniques pose an elevated risk of asphyxiation or death, and in the absence of adequate officer training, the use of those techniques are likely to result in instances of excessive force. Accordingly, the City's request to strike Plaintiff's allegation is denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant City of Phoenix's Motion to Dismiss (Doc. 3).

(2) The Motion to Dismiss (Doc. 3) is **granted in part** as to Count One of the Second Amended Complaint and the claim is **dismissed**. The Motion is otherwise **denied**.

(3) All further matters shall remain referred to the Magistrate Judge for disposition as appropriate.

Dated this 23rd day of March, 2021.

Honorable Susan M. Brnovich
United States District Judge

- 14 -